JOSEPH S. BAKER, Admr.

*v.*

DANIEL J. UPDIKE, Admr. *et al.*

*Filed at Mt. Vernon January 14, 1895.*

1. MORTGAGES—*delivery not proved by a declaration of indebtedness.* The delivery of a mortgage, proved to have been signed and acknowledged, is not established by proof of statements made by the mortgagor that he had bought the land of the mortgagee and had a long time to pay for it, in which statements no reference was made to a mortgage.

2. PLEADING—*vendor's lien cannot be established under bill to foreclose mortgage.* A vendor's lien for purchase money cannot be established and foreclosed in an action in equity wherein the bill seeks to establish and foreclose a mortgage alleged to have been made for such purchase money.

3. WITNESSES—*competency of an heir in chancery.* One who, as an heir-at-law, has an equal interest in each of two estates, is not disqualified, by interest, as a witness in a litigation between the two.

WRIT OF ERROR to the Circuit Court of Lawrence county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

CALLAHAN, JONES & LOWE, for plaintiff in error.

J. S. PRITCHETT, and F. C. MESERVE, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Joseph S. Baker, administrator of the estate of Middleton W. Updike, deceased, against Daniel J. Updike, administrator, and Nancy J. Updike, Sylvester Updike, Elmer Updike, Bird Updike, Joanna Updike, Dora Updike and said Daniel J. Updike, the heirs-at-law of James R. Updike, deceased, to reform and correct a deed and to foreclose a mortgage. The bill alleges that on the 6th day of March, 1889, Middleton W. Updike sold and conveyed to James R. Updike all his interest in certain lands in Lawrence county, his interest and the interest intended to

be conveyed being an undivided three-fourths of the land, but that by mistake and inadvertence of the scrivener who drew up the deed, it was so drawn, executed and delivered as to purport to convey the entire estate in the land, and that on the 14th day of February, 1890, the deed was placed on record; that for such conveyance the grantee, James R. Updike, became indebted to the grantor in the sum of $1057.50, and that to secure the payment thereof in one year, with interest at the rate of eight per cent per annum, James R. Updike executed and delivered to Middleton W. Updike a mortgage on the premises so conveyed; that the mortgage has been misplaced, so that the complainant has never been able to get it into his possession and is now unable to produce it; that Middleton W. Updike died intestate January 25, 1890, the complainant being afterwards appointed his administrator, and that James R. Updike died intestate February 10, 1890, leaving him surviving, his father, mother, brothers and sisters, being the parties defendant to the bill, his next of kin and heirs-at-law, his father, Daniel J. Updike, being appointed his administrator, and that the above mentioned sum of $1057.50, and interest thereon from March 6, 1889, remains due and unpaid.

The bill prays that the above mentioned deed, and the record thereof, may be so corrected and reformed as to convey only the undivided three-fourths of the land in question; that an account be taken of the amount due on the mortgage, and that a decree be entered for a foreclosure of the mortgage and a sale of the mortgaged premises for the payment thereof, and also a general prayer for relief.

The answer admits the execution of the deed from Middleton W. Updike to James R. Updike, but denies that there was any mistake or inadvertence in drawing up the same, and also denies that James R. Updike ever, at any time, executed, acknowledged or delivered the alleged mortgage, or that said mortgage ever had an

existence. It alleges that James R. Updike, in his lifetime, fully paid Middleton W. Updike the purchase money for the lands described in the deed, and satisfied the same in full; that while a writing of some kind, as the defendants are informed and believe, was made by James R. Updike to Middleton W. Updike, it was never regarded as a mortgage or lien on the lands, or intended so to be, but that whatever that writing was, it was delivered over and surrendered to James R. Updike by Middleton W. Updike for a valuable consideration, before the latter's death.

Replications to the answers being filed, the cause was heard on pleadings and proofs, and at such hearing the court found the equities of the case to be with the defendants, and dismissed the complainant's bill at his cost. To reverse that decree the complainant now brings the record to this court by writ of error.

At the hearing, the deposition of the justice of the peace who drew up and took the acknowledgment of the deed was read, and he testifies that he, at the same time, drew up and took the acknowledgment of a mortgage from James R. Updike to Middleton W. Updike covering the same land, as he understands it, and that the consideration of the deed and mortgage was three-fourths of the price of ninety-five acres of land at $15 per acre, making $1057 and some cents. He further testifies that no note was drawn up because James R. Updike then expected to make a considerable payment upon the indebtedness, the amount of which could not then be ascertained. Also, that when the deed and mortgage were acknowledged, he handed the former to Middleton W. Updike and the latter to James R. Updike, and that they soon after went away, and there is no evidence that the mortgage was delivered at that time, nor is there any evidence of its subsequent delivery. He further testifies, that when the deed was drawn up Middleton W. Updike said that he owned only an undivided three-fourths of

the land, the other one-fourth belonging to another heir, but no explanation is made of the reason why the deed was so drawn as to convey the entire estate in severalty, nor is there any suggestion that it was not drawn up and executed precisely as the grantor intended. The testimony of this witness is corroborated, in part, by that of his wife, who was present at the time the deed was drawn and acknowledged.

The remaining testimony upon which reliance is placed as tending to show that the mortgage was delivered and is an existing lien on the land, consists of the statements of the witnesses of several declarations made by James R. Updike between the date of the deed and the time of his death, to the effect that he had bought the land of Middleton W. Updike, and was owing him about $1050 for it, and in some of which he said that he had a good, long time to pay for it. It is not pretended that in any of these conversations he made any reference to a mortgage, or admitted that any such instrument was in existence. It is scarcely necessary to say that this evidence, although it may tend to show an indebtedness from James R. Updike to Middleton W. Updike on account of the conveyance of the land, does not tend to show that the mortgage was ever delivered, or that it ever became an incumbrance upon the land.

But it is contended, on behalf of the complainant, that if no mortgage is established, the evidence is sufficient, at least, to show the conveyance of the land and that the purchase money remains unpaid, and therefore that the complainant is entitled to a vendor's lien, and that such lien should have been declared and enforced by the decree. To this contention it is perhaps sufficient to say that the bill is not framed upon that theory, but alleges the execution and delivery of the mortgage and its existence as a valid lien on the land, and prays for its foreclosure, and a sale of the mortgaged premises to satisfy the amount, principal and interest, due thereon. The

complainant must abide by the case made by his bill, and can not make one case by his bill, and at the hearing seek to obtain relief upon a wholly different theory.

It requires no argument to show that if the allegations of the bill are true there is and can be no vendor's lien. A vendor's lien is not recognized by our statute and is entirely unknown to the common law, but has been engrafted upon the equity jurisprudence of England from the civil law. It is based upon the implied agreement between the vendor and vendee that the former shall hold a lien on the lands sold, for the payment of the purchase money. Accordingly, where the vendor, parting with the legal estate, takes security other than the personal liability of the purchaser for the payment of the purchase money, he thereby waives his lien. (*Conover* v. *Warren*, 1 Gilm. 498; *Richards* v. *Leaming*, 27 Ill. 431; *Warner* v. *Scott*, 63 id. 368; *Kirkham* v. *Boston*, 67 id. 599; *Ilett* v. *Collins*, 103 id. 74; *Beal* v. *Harrington*, 116 id. 113.) The execution of a mortgage on the land sold, thereby creating an express lien thereon, is inconsistent with and excludes the theory of an implied lien. So here, the bill, by alleging a mortgage, alleges, in effect, a waiver of an implied or vendor's lien, and excludes the possibility of the existence of such lien; and the complainant can not, on failing to prove his allegations as to a mortgage, abandon them and treat the case as though such allegations had not been made, and seek to obtain a decree upon a theory which his bill, as drawn, expressly excludes.

If, then, the case is considered solely in the light of the evidence adduced on the part of the complainant, we are of the opinion that a decree dismissing the bill for want of equity was the only one which the court could properly render. It is not important, therefore, to determine whether the court erred in the admission of the testimony of Daniel J. Updike, one of the defendants, for the purpose of showing that the land was conveyed to James R. Updike by Middleton W. Updike as a gift, or

in consideration of services rendered or to be rendered by James R. Updike to him.

It appears, however, that on reference of the cause to the master to take and report proofs, Daniel J. Updike was called as a witness by the complainant, and that upon his examination in chief he testified that Middleton W. Updike was his brother and that James R. Updike was his son; that Middleton W. Updike was never married, and that he left him surviving the witness and five others, his brothers and sisters, and the children of a deceased brother, his next of kin and heirs-at-law; that James R. Updike was never married, and that he left the witness and the other defendants to this suit his next of kin and heirs-at-law; that witness knew of the conveyance of the land in question by Middleton W. Updike to James R. Updike, and that as administrator of the estate of James R. Updike he found the deed among the papers of his intestate and had it recorded, and still has it in his possession as administrator.

The witness then, on cross-examination, testified, in substance, that shortly before the execution of the deed James R. Updike was talking of going west; that Middleton W. Updike was, and for many years had been, in poor health, and that James R. Updike had attended to most of his business of importance, and particularly during the winter had attended to feeding and caring for his hogs; that Middleton W. Updike was averse to having James go away, for the reason that he would not only be deprived of his society but would have no one to look after his affairs, and that to prevent his going away he proposed to, and afterwards did, deed to him the land, the only consideration being the services rendered, and the undertaking by James to continue such services during the lifetime of Middleton. This testimony of the witness, given on cross-examination, was objected to at the time it was given, on the ground that the witness, being interested in and a party to the suit, was incompe-

tent to testify in his own behalf, and that objection was
renewed when the defendants' counsel offered to read this
testimony at the hearing, but the objection was over-
ruled and the testimony was permitted to be read. This
ruling is assigned for error, and it constitutes one of the
principal grounds upon which the complainant's counsel
now seek to have the decree reversed.

It appears, however, that another witness, to whose
competency no objection is raised, testified to substan-
tially the same facts, and that his testimony is corrob-
orated, in the main, by the testimony of two other
witnesses, all three of these witnesses testifying to state-
ments by Middleton W. Updike that the land was a gift
by him to James R. Updike, made in consideration of the
services of the latter to him. Even then, if the testi-
mony of Daniel J. Updike was improperly admitted and
should have been disregarded, the testimony of the three
other witnesses was amply sufficient to warrant a find-
ing by the chancellor that the land was in fact a gift.

But we are not inclined to hold that the witness was
incompetent. He was an heir-at-law of both intestates,
his share in both estates being one-seventh. His interest,
then, was equally balanced, and the result of the suit, so
far as can be seen from the present record, was a matter
of indifference to him. In chancery, a witness is not dis-
qualified merely because he has an interest in the event
of the suit, but his interest must be against the party
whose interest is sought to be prejudiced by his testi-
mony, and even where he has an interest in favor of the
party calling him, he may still be competent if it appears
that he has an equal interest on the other side. If his
interest is equally balanced and his mind is in a state of
equipoise, which leaves him indifferent to the result, he
is competent. *White* v. *Ross,* 147 Ill. 427.

After carefully considering the record we find no
ground for disturbing the decree of the circuit court, and
it will therefore be affirmed.                    *Decree affirmed.*