RUSSELL NADEN, Trustee, Plaintiff-Appellee, *v.* RUSSELL NADEN *et al.*, Defendants-Appellants.

Second District (1st Division)    No. 74-353

Opinion filed April 26, 1976.

Lloyd E. Dyer, of Donovan, Atten, Mountcastle, Roberts & DaRosa, of Wheaton, and Oliver DeBartolo, of Aurora, for appellants.

Dallas C. Ingemunson, of Ingemunson & Bassak, of Yorkville, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Russell Naden, as surviving trustee of a land trust in Kendall County, brought an action against himself individually and some 60 others, seeking a determination that the present beneficial owners are, in varying stated percentages, himself, Maurice and David Grimwood, Nathaniel Barnard and Alice Thompson, and directing him to convey the fee to them, thus ending the trust. The trial court eventually heard witnesses, found the owners to be as above stated and ordered the trustee to convey the fee to them. Five adult children of Charles Lindholm, deceased, one of 15 original beneficiaries, appeal, claiming, amongst them, a .04215 interest. They contend that the trial court erred (1) in permitting Russell Naden to testify as to his conversations with Charles Lindholm; and (2) in admitting Naden's account book and Lindholm's will into evidence; and (3) that, in any event, the determination as to ownership is contrary to the manifest weight of the testimony. We affirm.

The only two witnesses at the trial were Russell Naden, the plaintiff and trustee, and Herman Lindholm, one of the five appellants, all of whom are adult children of Charles Lindholm. Naden testified over their objection that his testimony was barred by the so-called "Dead Man's Act" (Ill. Rev. Stat. 1973, ch. 51, §2), which the court overruled.

According to Naden's testimony, the land trust of the Grimwood Farm property was established in 1935 as the outcome of a foreclosure. Among the 15 original beneficial owners were Russell Naden, Stanley Naden, Louis Dean and Charles Lindholm. Under the trust agreement, which was introduced into evidence, the trustees (Louis Dean and the plaintiff Russell Naden) agreed to act as trustees without compensation but were not to be liable for mistakes of judgment.

Russell Naden has acted as trustee from 1935 to the present date. Louis Dean acted as co-trustee until 1939 when, after a dispute over the tenant, he sold his interest to Russell Naden for $1,000. Charles Lindholm was present at that meeting and said "Write me a check for $1,000 too and I want to get out." Russell Naden said that he was not interested but that Stanley Naden would perhaps be willing to purchase his interest. Shortly after the sale by Dean, the annual meeting of the beneficiaries of the trust was held and Russell Naden told Stanley of Lindholm's desire to sell out. Stanley then said he would buy Lindholm out and Lindholm told Stanley he would meet him at the bank on the next day. Stanley Naden thereafter was considered the owner of that share and future payments were made to him. Several times after that meeting Lindholm told Russell Naden he was glad to be out of it. However, Russell Naden never saw any written instrument conveying Charles Lindholm's interest. (While Naden now has

written instruments evidencing many of the transfers, he actually did not receive most of them at the time the transfers were made; rather he received them after the death of the attorney who had represented many of the parties. Naden indicated the change of ownership in his account book in each instance simply when he was informed by the attorney or by the purchaser of the transfer; he relied on these representations in making the notations.)

As trustee, Russell Naden kept a record of all receipts and expenditures and the distribution of any balance to the various beneficiaries. Each beneficiary was sent a copy of this record annually. Likewise, if there was any balance to distribute, they received that annually. Lindholm received $50 for the year 1936-1937; $90 for the year 1938-1939; and $50 for the year 1939-1940. He received no payments after that; the payments, according to the account book, being made to Stanley Naden and later to Ada and Maurice Grimwood who purchased Stanley's interest. The payments to Lindholm were made by mail. Lindholm knew Russell Naden's address but never complained that he was not receiving any distributions after 1940.

Up until 1940 there were annual meetings of the owners of the beneficial interests. After that there were only informal meetings of the owners; Russell Naden contacted them himself.

Herman Lindholm testified for the appellants that his father became totally blind in 1942 and did not thereafter go out on the streets (this testimony was contradicted by that of Russell Naden who testified that he last saw Charles Lindholm in 1945 or 1946 and that he was not totally blind at that time). His father told him he had this trust which he had received as part payment when he sold the farm. He never indicated that he had transferred it. He knew that his father had lent money to Mr. Grimwood but did not know at what time. He did not know if there had been more than one note.

Over the appellant's objection, the appellee introduced into evidence Lindholm's will and the inventory of his estate. Neither mentioned any interest in the Grimwood Farm or trust. Lindholm's widow signed the inventory but it would appear that in fact Herman Lindholm was the executor.

■■ We shall first consider the appellant's contention that, even considering all of the evidence, the court erred in finding that a transfer had been made by Charles Lindholm. It is axiomatic that a decision of the trial court will not be reversed when the judgment is clearly right. (*Shafer v. Northside Inn, Inc.* (1963), 44 Ill. App. 2d 86, 90, 194 N.E.2d 5.) Here the evidence as to the transfer is overwhelming. The only evidence that no transfer was made was Herman Lindholm's statement that his father had never told him that he had transferred his interest. It is well settled

that courts lend an unwilling ear to testimony by interested persons as to what a dead person has or has not said, and such evidence shall be carefully scrutinized as well as considered with all the other evidence in the case. (*Lasky v. Smith* (1950), 407 Ill. 97, 106, 94 N.E.2d 898.) Appellants contend that only this alleged transfer was not evidenced in a writing introduced into evidence; a careful comparison of the assignments and the transfers disclosed by the complaint, however, reveals several other transfers not evidenced by a writing introduced at the trial.

On the other hand, the trustee's testimony reveals that in 1939, after a dispute over the tenant, Louis Dean sold his interest to Russell Naden for $1,000; that Charles Lindholm was present and said "Write me a check for $1,000 too and I want out"; that Naden would perhaps be willing to purchase his share; that shortly thereafter the annual meeting of the shareholders was held and Russell told Stanley of Lindholm's expressed desire to sell his share; that Stanley said that he would buy Lindholm out and Lindholm told Stanley to meet him at the bank the next day; that Stanley Naden thereafter was considered the owner of that share and future payments were made to him; that Lindholm several times thereafter told Russell Naden that he was glad to be out of it; and that at no time in the 12 years between the alleged sale and his death did Charles Lindholm ever question or protest the fact that he was not receiving any income from the property or any notices of the meetings.

■■ As was aptly stated by Mr. Justice Brewer in *Halstead v. Grinnan* (1894), 152 U.S. 412, 416, 38 L. Ed. 495, 497-98, 14 S. Ct. 641, "so strong is the desire of every man to have the full enjoyment of all that is his, that when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge and yet has never attempted to enforce them, there is a strong persuasion that, if all the facts were known, it would be found that his alleged rights either never existed, or had long since ceased." Here, the decedent's inaction for 12 years and his heirs for over 20 speak louder than words as an admission that Charles Lindholm had no rights in the property to claim.

■■ It must further be noted that during the 33 years the decedent and his heirs did nothing although the payments had been stopped, the property has been transferred to third parties for value. It is the Grimwoods (Maurice and David), not the trustee or Stanley Naden, who will be injured if this court should rule for the appellants. Furthermore, during this period witnesses have died, including Charles Lindholm, Louis Dean and, apparently, Stanley Naden. Equity does not encourage stale claims. (*Johnston v. Masterson* (1947), 397 Ill. 168, 173, 73 N.E.2d 401.) "Unreasonable delay bars relief; it may not be relied upon to defeat

576

meritorious claims." (*Adair v. Shallenberger* (7th Cir. 1941), 119 F.2d 1017, 1020.) As stated by our Supreme Court in *Howe v. South Park Commissioners* (1886), 119 Ill. 101, 117-118, 7 N.E. 333:

> "* * * The principle that lies at the foundation of all the cases in this court on this subject is, the party who challenges the title of his adversary to real property, must be diligent in discovering that which will avoid the title or render it invalid, and diligent in his application for relief. Unreasonable delay, not explained by equitable circumstances, has always been declared evidence of acquiescence, and will bar relief. Surely the grantors of complainant in the cross-bill have not been diligent in their application for relief in this case. More than a quarter of a century was suffered to pass before any one attempted to assert any title acquired either from the assignee in bankruptcy or the assignee under the voluntary assignment made by Harris for the benefit of his creditors. Since then, the land involved has increased in value manifold times, and other rights have attached, founded in good faith and for valuable considerations; and now, at this late day, the complainant in the cross-bill seeks to have the title established in him. This would be inequitable, and especially after the lapse of so great a period, even if it should be conceded the former grantees may have had equitable rights in the premises, had they asserted them in apt time. Not a single fact is proven that stood in the way of an earlier application by them for relief, had they believed they were entitled to any. There is evidence, however, that tends to show the former grantees of the assignees of Harris had abandoned all claim to the property long years ago, and to induce the belief, the present claim is put forth, on the doctrine of chances that a speculation might possibly be realized. It seems difficult to understand how the claim of ownership to this property, now become very valuable, from either source insisted upon, can be put forth in good faith. The proposition that the complainant in the cross-bill can assert any title to the property that his grantors could not, needs no argument in its support. Their *laches* will constitute as effectual a bar to him, as it would have been to them had this suit been brought in their names or by them. * * *""

In view of the foregoing, we conclude not only that the determination as to ownership is not contrary to the manifest weight of the evidence but that it is amply supported by it.

The appellants also contend that Russell Naden was a "person directly interested in the action" and was therefore barred, by the "Dead Man's Act" (Ill. Rev. Stat. 1973, ch. 51, §2), from testifying, "on his own behalf," over objection by one defending "as the representative of a deceased

\* \* \* person," to "any conversation with the deceased \* \* \* or to any event which took place in the presence of the deceased" and that the admission of this testimony constitutes reversible error here.

■■ While Russell Naden has long and still does himself own 18.9846% of the trust, his ownership did not in any part derive from the 4.215% interest once owned by Charles Lindholm and a holding that Charles Lindholm's five children now own that interest would in no way reduce Russell Naden's share. It could only reduce the shares of Maurice and David Grimwood, who became purchasers of an interest in 1948. Hence Russell Naden is not a "person directly interested in the action" by virtue of his said ownership and he furthermore, was not, in the wording of the section, testifying "on his own behalf" when he testified in support of the conveyance of Charles Lindholm's share to Stanley Naden. In appellants' brief, they expressly concede that "Russell Naden's interest as beneficiary would not be affected by the distribution of the Lindholm share."

Where the witness will neither gain nor lose by the event of the suit, he is competent to testify. *Bellman v. Epstein* (1917), 279 Ill. 34, 37, 116 N.E. 707; *White v. Ross* (1893), 147 Ill. 427, 439-440, 35 N.E. 541; *Baker v. Updike* (1895), 155 Ill. 54, 60, 39 N.E. 587.

■■ The appellants' real attack on Russell Naden's testimony is based on the fact that he is the plaintiff, and is suing as trustee and that, if it be determined that the children of Charles Lindholm now own his share, he, the trustee, may have some liability for payments made to others since 1940.

But this contention completely ignores the express provision of the statute (Ill. Rev. Stat. 1973, ch. 51, §2(4)) that

> "(c) 'Person directly interested in the action' or 'interested person' does not include a person who is interested solely as executor, trustee or in any other fiduciary capacity, whether or not he receives or expects to receive compensation for acting in that capacity."

Furthermore, the trust agreement here expressly provides that the trustee shall not be liable for errors of judgment and the entire claim here would be barred by the more than 30-year delay set out earlier in this opinion.

We therefore conclude that the objection based on the "Dead Man's Act" lacks merit.

■■ The appellants also complain of the admission of the trustee's record book showing the annual income and expenditures and the payments made to the different owners, saying that it was improperly offered to prove that a transfer had been made. We would agree that the account book is not a business record of the transfer of ownership particularly since the trustee had no personal knowledge of such transfers.

But an examination of the record reveals that the account book was not offered as proof of the transfer. It merely corroborated the trustee's testimony that Charles Lindholm received no payments after 1939, which is not disputed. Hence, there is, in view of the fact that this was a bench trial, no reversible error.

■■ The appellants also object to the introduction of Charles Lindholm's will in evidence. Since the will (except for a few monetary bequests) merely willed the estate to his wife for life and then to his children, we disagree with the appellee's contention that the failure specifically to refer in the will to the beneficial interest here involved is negative evidence of its transfer. The appellants do not suggest, however, in what way the introduction into evidence of the will could have affected the decision of the judge who was sitting without a jury, particularly since the court itself indicated the evidence of the will was not needed but, since the parties were going to appeal anyway, he would allow any evidence. 3 Ill. L.&Pr. *Appeal and Error* §822 (1953).

We therefore conclude that the judgment as entered is correct and affirm it.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.