## JOHANNA RANN *et al.*

### *v.*

## PATRICK RANN.

*Filed at Ottawa June 16, 1880.*

1. CHANCERY—*multifariousness.* Three brothers, desiring to purchase certain tracts of land, procured a third person to make the purchase in his own name, they to pay the purchase money as it should become due. Other tracts were purchased in the same way, the legal title being in the names of several persons. Different portions of the lands so purchased were taken possession of severally by the three brothers, who farmed the lands, made payments on the purchase money, and verbally agreed upon the mode of division among them. Pending these transactions one of the brothers absented himself from that part of the country, and remained away several years, until finally, the two remaining brothers, on the supposition the absent one was dead, procured the conveyance of the legal title to all of certain parcels of the lands to be made to them, agreeing, however, in the event of the return of the absent brother, to convey his portion to him. A mistake was made in conveying some of the tracts. There was an outstanding mortgage upon others. The legal title to a portion still remained in the original vendors. One of the brothers who remained at home, and in whom was vested in the manner mentioned the legal title to a parcel of the land which, by their verbal agreement, was to belong to the one who had absented himself, died, leaving a widow and several children. While matters were in this condition the absent brother returned, and filed his bill in chancery, making the surviving brother and the representatives of the deceased brother parties, in order to procure the conveyance to him of the legal title to the portions of the lands belonging to him. The holder of the outstanding mortgage was made a party; also the grantor in the deed in which the mistake had occurred, and the holders of the legal title to such portions of the land as had not yet been conveyed. The bill sought to have all these various matters adjusted in the one suit. It was held the bill was not multifarious, as containing dissimilar and disconnected matters. The court having jurisdiction to decree a partition, might well retain the case to adjust all the other questions affecting the same property.

2. WITNESS—*competency—persons interested, as against heirs.* Three persons holding certain lands in common, under a contract of purchase, agreed verbally as to the manner of division among them. The legal title to all the lands was, however, conveyed to two of them, and one of these two subsequently died. Upon bill filed by the third against the heirs of the deceased part owner and the survivor, who thus held the legal title, to compel a conveyance to complainant of his proper share of the lands, it was *held,* the

defendant who was the survivor of the two holding the legal title had no such interest in the litigation between the complainant and the heirs of the deceased co-tenant as would render him incompetent to testify in behalf of the complainant against the heirs.

3. SAME—*parties as witnesses.* The statute seems to contemplate the right of an adverse party to call the other to testify, in all cases. So, a co-defendant with persons defending as heirs, when called by the complainant, may testify to matters in his own interest as against the heirs.

4. PERSONAL DECREE—*what constitutes.* A decree which simply requires a holder of the legal title to land to convey to a purchaser, upon the latter paying a certain sum claimed under a vendor's lien, is not to be regarded as a personal decree against the purchaser for the money. This in nowise imposes any liability in case of non-payment.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Grundy county, the Hon. H. GOODSPEED, Judge, presiding.

Mr. M. T. MALONY, for the appellants:

*Laches* can not be imputed to minors, and everything must be proved against them and nothing admitted. *Smith* v. *Sackett,* 5 Gilm. 534; *Hill* v. *Ormsbee,* 12 Ill. 166; *Hamilton* v. *Gilman,* id. 266; *Tuttle* v. *Ganet,* 16 id. 354; *Reddick* v. *President, etc., State Bank,* 27 id. 148; 18 id. 48; *Chaffin* v. *Heirs of Kimball,* 23 id. 36; *Tibbs* v. *Allen,* 27 id. 129.

There can be no partition of lands unless the complainant has a legal title to the same. *Ross* v. *Cobb,* 48 Ill. 111; *Schneider* v. *Seibert,* 50 id. 284; *Williams* v. *Wiggand,* 53 id. 233.

Thomas Rann, one of the defendants and a brother of complainant, being directly interested in the event of the suit, was incompetent as a witness to testify to anything that would affect the interest of the minor heirs. Rev. Stat. 1874, p. 488, sec. 2.

Appellants claim that such parties are relegated back to the common law, and are not disqualified to testify whenever they are interested. It makes no difference whether the party is

plaintiff or defendant when his testimony affects a minor heir. *Fischer* v. *Fischer,* 54 Ill. 231; *Mixel* v. *Lutz,* 34 id. 382; *Hill* v. *Ormsbee,* 12 id. 166; *Rector* v. *Rector,* 3 Gilm. 105.

One partner can not testify against another even, since the act of 1861 removing the disqualification of witnesses. *Alexander* v. *Crosthwaite,* 44 Ill. 349; *Brown* v. *Hurd,* 41 id. 122.

The true test of interest is, will the witness either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. *New England Fire and Marine Insurance Company* v. *Wetmore,* 32 Ill. 221; *Kennedy* v. *Evans,* 31 id. 258.

Mr. P. A. ARMSTRONG, for the appellee:

The parol partition was valid. *Tomlin* v. *Hilyard,* 43 Ill. 300; *Nichols* v. *Paddlefield,* 77 id. 253; *Shepard* v. *Rink,* 78 id. 188.

A court of equity will not decree a conveyance from a party before his vendor's lien is satisfied. 3 Sugden on Vendors, 117; *Boynton* v. *Champlin,* 42 Ill. 61.

"A resulting trust arises from the fact that the money of one person has been invested in land, the conveyance of which is made in the name of another. The trust is raised in favor of the party whose money has been used, with or without his knowledge, in the purchase." *Bruce* v. *Raney et al.* 18 Ill. 67; *Remington* v. *Campbell,* 60 id. 516; *Smith* v. *Smith,* 85 id. 189.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill for partition, filed by Patrick Rann, against his brother Thomas Rann, Johanna Rann, the widow of his brother James, and James, Hannah M. and Catherine F. Rann, his children and heirs, and Mathew Montgomery, Patrick Lamb, John Weldon and the board of trustees of schools, township 31, range 6, in Grundy county, and to have

resulting trusts executed, and for the removal of clouds on the title to a portion of the lands named in the bill.

On a hearing in the circuit court the relief sought was granted. An appeal was taken to the Appellate Court, where the decree was affirmed, and the case is brought to this court and a reversal is urged.

The three brothers, Thomas, James and Patrick Rann, in 1857, desiring to purchase, on time, three forty acre tracts of the school section, but not having other lands to pledge as security for the payment of the purchase money, procured their cousin, John Weir, to purchase for them in his name, they to make the payments as they should fall due. He executed no writing to evidence the arrangement. The three brothers worked, farmed, bought and sold stock together and paid for the land from the proceeds of their joint efforts.

. In 1862 appellee enlisted in the military service, and sent home to his brothers his pay at different times, which was applied on the purchase of this and other lands. There is evidence tending to show that appellee reduced the forty acre tract in controversy to cultivation, and it was generally known as his. James moved on and occupied another one of these forty acre tracts with his family.

In 1865 the three brothers purchased another eighty acre tract on section sixteen, paying $900 to Murphy, who had purchased of the school trustees, and assuming to pay the school fund the sum Murphy owed on his purchase, and Patrick Lamb and John Noonan were substituted as purchasers, and gave the required mortgage security, the Ranns not having acquired the title to the one hundred and twenty acres purchased in the name of Weir. Lamb became the nominal purchaser of one forty and Noonan the other. Thomas and Patrick lived with James, and all three improved and cultivated their lands, then amounting to two hundred acres.

In September, 1868, the three brothers purchased two more tracts of land, one on section fifteen and the other on section sixteen, in the same township, from S. L. Oaks, for $3000.

This purchase embraced one hundred acres, making three hundred in all, owned in the same manner, and to which they held no legal title or even written agreements. The evidence, we think, sufficiently shows that when this last purchase was made the three brothers verbally agreed to a division of these lands, by which James was to have one hundred and twenty acres, including the tract on which he resided. Thomas was to have one hundred acres on which he resided. Appellee was to have eighty acres, including the forty in controversy, and James was to pay him $600, to make his share equal. Lamb conveyed the sixty acres on section fifteen to Thomas, and Noonan conveyed the forty acres on section sixteen to James, and they then paid $1000 on the purchase, and Thomas and James gave notes and mortgages on the portions thus conveyed to them for the balance of the purchase money.

Appellee, in the winter of 1869–70, being threatened with a prosecution for defamation of character of some persons in the neighborhood, fled the country. He remained away until after James' death, in July, 1876. When he left, there were, in the hands of his brothers, horses, cattle and other property of considerable value, which he owned. They sold a number of the horses, the proceeds of which were applied to paying for the lands, and James and Thomas divided his cattle, the unsold horses and other property. In 1873, not having heard from appellee, supposing he was dead, they procured deeds from Weir and Lamb for one hundred and sixty acres of the lands. James received a deed for the forty in controversy, which had been understood to belong to appellee, and Thomas received a deed to appellee's other forty, which he submits without any contest to convey to appellee. When they procured the deeds they represented that appellee was dead, and agreed that if he was not, they would convey to him his share.

Lamb, in conveying, made a mistake in the description of the land, and was made a party to the bill that the description might be corrected. Weldon held the legal title to one forty

sold by Oaks to the Ranns, and to procure a conveyance from him he was made a party. Montgomery was made a party to correct a mistake in conveying a portion of the land, and the trustees of schools as mortgagees of a portion of the lands, and the widow and heirs of James, were made parties to procure a conveyance of appellee's portion, held by James, and they, only, appeal.

It is urged that the bill is multifarious, and the decree should be reversed. This is a manifest misconception. The bill does not contain dissimilar and disconnected matters. It is true, it relates to several tracts of land, but they all belong to the same persons. And the facts give the court jurisdiction to decree a partition, and the court having acquired such jurisdiction of the persons and the subject matter, according to well recognized rules of chancery practice, it was the duty of the court to do complete justice between the parties. And, in doing so, it was proper, as an incident to the proceeding, to correct deeds of conveyance and decree a specific performance of contracts for a conveyance of some of the tracts, to vest the title in the purchasers. All three purchased and paid for the lands, and they were entitled to deeds conveying the legal title, so that when partition was made each party should have his equitable title converted into a legal title. There are no grounds for holding that the bill is multifarious.

It is urged that the evidence fails to support the decree. On examining it we think it is ample. It shows the land was purchased by the three brothers for their joint use, and that they all contributed by their labor and means to its improvement, and that the purchase money was thus paid. They were, then, on every principle of justice, each entitled to an equal portion of the lands. And they fully recognized the right, and by verbal agreement made what they considered a fair and just partition of the lands, and under that agreement each took and held possession of his share. Nor does it appear that any of them were dissatisfied with the

arrangement. It was, therefore, eminently proper that the court should carry into effect this verbal partition.

James, in his lifetime, procured a conveyance of appellee's forty acres of land on section 16, under the supposition that he was dead, and with the agreement that if he was not, James would convey to him his share of the first purchase. Of these facts there can be no doubt from the evidence. James, then, obtained title to what belonged to appellee, without any legal or equitable right. He paid nothing for it, and agreed to hold it in trust for appellee, and convey it to him, if he was not dead. This unquestionably would render it highly inequitable and unjust to permit James, or his heirs, since his death, to deprive him of it. Every principle of justice requires that appellee should be invested with the title to it, and the decree in this respect is clearly right. The evidence not only justifies, but requires the decree.

It is urged that Thomas Rann was interested in the event of the suit, and was, therefore, disqualified to testify against the heirs of his brother James. We are wholly unable to see that he had the slightest interest. He permitted the bill to be taken *pro confesso* against himself, and thereby admitted that he should convey to appellee the portion of appellee's land which had been conveyed to him. We are totally at a loss to see in what possible manner he could promote his interest, if the forty James held of appellee's land is conveyed to him. If the witness had been claiming the land under a cross-bill, then his interest would be apparent; but no such interest appears on this record. His evidence was properly received, and must be considered. The cases referred to as holding that parties in interest can not testify, were decided prior to the adoption of the act of 1867 removing disabilities of witnesses on account of interest, and they can, therefore, have no application in this case. Their pertinency to the case is not perceived.

It is urged that Weldon was an incompetent witness to testify to the fact that he held a vendor's lien of $52, which

he claimed should be paid to him before he conveyed the land, the title to which was in his name, to the heirs of James Rann. It is manifest that he can not be required to convey until he is paid for the land. Weldon was not called on his own behalf, but by appellee, who was complainant, and, consequently, the adverse party; and the statute seems to contemplate the right of an adverse party to call the other in all cases. Again, if he was not a competent witness, and his testimony was inadmissible, still, that is no ground for reversing the decree in favor of appellee. It, at most, would only be ground for reversing that portion of the decree providing that Weldon should convey to James Rann's heirs. Exclude all of his evidence, and there is still sufficient evidence to sustain the decree in favor of appellee. Nor is the decree a personal one against appellants. It only requires Weldon to convey when the $52 is paid to him. It does not require payment, and render appellants liable in any manner on a failure to pay.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*