ELLEN ACKMAN *et al.* Appellees, *vs.* FRANK POTTER, Appellant.

*Opinion filed April 23, 1909.*

1. WITNESSES—*defendant to bill is not incompetent to testify against co-defendant.* A defendant to a bill to set aside a deed as a cloud upon complainant's title is not, by reason, alone, of being a defendant, incompetent to testify against a co-defendant.

2. SAME—*when witness is not disqualified.* A co-defendant of a person defending, as an heir of the grantee, a bill to cancel the deed as a cloud is not incompetent to testify against such heir under section 2 of the Evidence act, where, if the deed is sustained, the witness will also take as an heir of the grantee while if it is set aside she will have only a possible interest, depending upon whether the complainant will devise the property to her or die without a will and without having disposed of the property.

3. SAME—*interest in suit must be legal and certain to render witness incompetent.* The interest which will disqualify "a person interested" in a suit from testifying under the conditions specified in the Evidence act must be a legal interest in the outcome of the suit, and such interest must be certain, direct and immediate, otherwise it goes merely to the credibility of the witness and not to his competency.

4. DEEDS—*intention of grantor is the controlling element on the question of delivery.* On the question of the delivery of a deed the intention of the grantor is the controlling element, and while the recording of a deed, particularly one of voluntary settlement, is *prima facie* evidence of delivery, yet such evidence may be rebutted; and the presumption of delivery of a recorded deed of voluntary settlement to an adult grantee is not so strong as where the grantee is a minor.

5. SAME—*what evidence overcomes presumption of delivery.*
The presumption of delivery arising from the recording of a deed
of voluntary settlement, reserving a life estate in the grantor, is
overcome by evidence that the grantor did not intend to record it
but that it was recorded by the grantee under a misunderstanding
of her rights, and that the grantor kept possession of the deed af-
ter its recording and continued in possession of the land with the
knowledge of the grantee, who disclaimed any ownership thereof,
although she did join with the grantor in a deed to a railroad
company conveying a small part of the land.

6. SAME—*reservation of life estate does not render deed a tes-
tamentary disposition of land.* The reservation of a life estate in
the grantor does not render a deed a testamentary disposition of
property nor prevent the immediate vesting of the remainder in
the grantee provided there is an actual delivery of the deed; but
a deed which is not to take effect until the grantor's death is void,
as an attempt to make a testamentary disposition of property with-
out complying with the Statute of Wills.

7. APPEALS AND ERRORS—*weight to be given testimony of wit-
ness is for the chancellor.* The weight to be given the testimony
of a witness whom the chancellor saw and heard testify in open
court is a question for the chancellor, and his finding will not be
overturned, on appeal, unless there is apparent error.

APPEAL from the Circuit Court of White county; the
Hon. P. A. PEARCE, Judge, presiding.

This is an appeal from a decree entered in the circuit
court of White county setting aside a certain deed as a
cloud upon the title to real estate. Appellee Ellen Ackman
owned the said premises in fee simple in 1901, and occupied
them with her husband, appellee James M. Ackman, as a
homestead and continued to occupy them up to the time of
the hearing in the circuit court. The premises consisted of
a dwelling and about an acre of land in the village of Cal-
vin, in said county, worth about $1600. Nellie B. Ackman
was a daughter of Ellen and James M. Ackman, and at the
time the deed in question was made she was about twenty-
two years old, and had been living a part of the time with
her parents and a part of the time with her half-sister,
Amanda A. Davenport. She had previously been married

but was at that time unmarried. Afterwards, in 1902, she married appellant, Frank Potter, and on June 15, 1908, died intestate, leaving said husband her surviving and no children, and leaving as her only heirs-at-law her father and mother and her half-sisters, Amanda A. Davenport and Mary M. Dish, who were children of her mother by a marriage previous to that with James M.. Ackman. The two half-sisters were made defendants in this cause but were defaulted.

The deed in question is in the general form of a statutory short-form warranty deed from the grantors, Ellen Ackman and James M. Ackman, her husband, to Nellie B. Ackman for the expressed consideration of one dollar, dated October 15, 1901, and acknowledged the same day before a notary public, and contains a release of homestead rights. Immediately after the description of the premises appears the following: "This deed is made to take effect at the · time of the death of the grantor, Ellen Ackman, the grantee taking only the remainder after grantor's death." The recorder's certificate shows that the instrument was filed for record October 16, 1901, at 4:15 P. M. The recorder's entry book shows that the deed, after being recorded, was delivered to James M. Ackman the day after it was filed, and the fee book shows that he paid the recording fee. Mr. Ackman also testified that he received the deed from the recorder. A deed was offered in evidence by the appellant dated February 2, 1906, in which the grantors were J. M. Ackman and Ellen Ackman, his wife, and Nellie Potter, conveying to the Cairo, Vincennes and Chicago Railroad Company a parcel of land containing about one-ninth of this tract in question. No evidence other than documentary was offered in behalf of the defense.

Amanda A. Davenport, a half-sister of Nellie B. Ackman, who was made a defendant in the bill but was defaulted, testified on behalf of the complainants, over the objection of the defendant. Her testimony was, in effect, that

on October 15, 1901, she and her husband were living on a farm near her mother's residence and at that time Nellie B. Ackman made her home with them; that said Nellie went to Grayville on the date last mentioned and Mr. and Mrs. Ackman also went to Grayville in another conveyance the same day, and that evening the said Nellie came home and told witness that "mother and father made the deed to me; mother is to hold the deed;" that it was the understanding between witness and her mother that the deed was not to be recorded until the mother's death. The main part of her testimony as to whether the deed was delivered and how it came to be recorded is as follows: "I took her (Nellie) to Calvin that morning to go to Carmi, and she says, 'I want to stop and see mother a little bit,' and she went in and her mother and father were not at home. We went on to the train, and when she came back from Carmi she says, 'I had that deed recorded.' I says, 'Why, Nellie, child, you ought not to have done that; it was not to be recorded.' She says, 'I did not know it; I thought I had a right to.' She always had access to their papers any time. She says: 'I went in and got it and took it down, and I did not know that. When I came back mother told me that I ought not to have done that because she did not intend to have it recorded. I brought the deed back and mother holds the deed.'" In reference to signing the railroad deed Mrs. Davenport testified as follows: "I know what my sister told me. She said she thought there was no use in her signing the deed. She said, 'The place is not mine.' She did finally sign it."

With the exception of the testimony of James Ackman as to the value of the property and that he took out the deed after it was recorded, and the introduction of the deed in question, this was all the evidence on behalf of complainant. It was admitted by counsel that appellees had lived on the property and paid taxes on it for many years and still resided on it. It appears to be admitted, also, that no

money consideration was given for the deed by Nellie B. Ackman to her mother.

P. J. KOLB, and BAINUM & PARISH, for appellant.

CONGER, PEARCE & CONGER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The contention of appellant that Mrs. Davenport was not a competent witness will be first considered. It is argued that as she was a co-defendant, under the common law she was not a competent witness against the appellant. The common law rule has been changed by statute. (Hurd's Stat. 1908, chap. 51, sec. 1, p. 1058.) Interest of a party, as a general rule, no longer disqualifies but only goes to his credibility as a witness, hence the common law authorities cited by appellant are not in point. Moreover, it has never been the rule in this State that in chancery a witness was necessarily incompetent because a party to the record. This court in *Dyer* v. *Martin,* 4 Scam. 146, in discussing the competency of a witness in chancery, stated (p. 150): "Here the inquiry is not so much whether the name of the witness appears upon the record, as whether he is, in fact, swearing to promote his own interest. * * * Nor is it a fatal objection that he has an interest in the event of the suit, but his interest must be against the party whose interests are sought to be prejudiced by his testimony." Again, in *Smith* v. *West,* 103 Ill. 332, we held that under the practice in chancery a defendant might always testify for a co-defendant if his evidence did not necessarily involve his own interest. To the same effect is *White* v. *Ross,* 147 Ill. 427.

It is further suggested by counsel for appellant that this witness was incompetent under section 2 of our chapter on evidence, as she was testifying against the interest of appellant, who was defending the suit as an heir. If the deed were sustained Mrs. Davenport would inherit as half-sister

of the grantee, whereas if the deed is set aside her only interest would depend upon the remote contingency that her mother might will the property to her or die without a will, without having disposed of the property in question. To render a witness incompetent he must, in general, have a legal interest in the event of the suit, and such interest must be certain, direct and immediate, otherwise his interest goes to his credibility and not to his competency. (*Illinois Mutual Fire Ins. Co.* v. *Marseilles Manf. Co.* 1 Gilm. 236; *Curtenius* v. *Wheeler,* 5 id. 462.) A witness is not rendered incompetent by reason of the existence of an inchoate right of dower which depends upon the contingency that he survive his wife. *Pain* v. *Farson,* 179 Ill. 185.

Appellant further suggests that Mrs. Davenport was not a competent witness, as, having been defaulted, costs might be charged against her. This contention is without force. If appellant should win, none of the defendants would be charged with costs; if appellees should win, costs might be charged against the witness. She was therefore, so far as the cost question is concerned, testifying against her own interest. Where three persons held certain lands in common under a contract of purchase, the legal title to the lands being conveyed to two of them and one of the latter subsequently dying, upon bill filed by the third against the heirs of the deceased part owner and the survivor to compel a conveyance of the proper share of the land, the surviving defendant permitted the bill to be taken *pro confesso* against himself, thereby admitting that he should convey to the other survivor a portion of the land standing in his name, and it was held that said surviving defendant had no such interest in the litigation between the complainant and the heirs of the deceased as would render him incompetent to testify in behalf of complainant against the heirs. (*Rann* v. *Rann,* 95 Ill. 433.) We think the trial court properly admitted this testimony.

The chief contention of appellant is that the deed was delivered. On the question of delivery the intention of the grantor is the controlling element. (*Creighton* v. *Roe,* 218 Ill. 619.) If the testimony of Mrs. Davenport is worthy of credence, there was never any intention on the part of the grantors that the deed should be delivered until after the mother's death. A deed must take effect upon execution and delivery or not at all. A deed of land which is not to take effect until the death of the grantor is void, as being an attempt to make a testamentary disposition of property without complying with the statute on wills. (*Benner* v. *Bailey,* 234 Ill. 79.) The reservation in a deed of a life interest in and the use and control of the premises does not render the deed testamentary in character or prevent the title in remainder vesting at once, if there has been an actual delivery of the deed. (*White* v. *Willard,* 232 Ill. 464.) The recording of a deed is *prima facie* evidence of its delivery, (*Valter* v. *Blavka,* 195 Ill. 610; *Blake* v. *Ogden,* 223 id. 204;) but the fact of recording does not, of itself, establish the delivery of the instrument. (*Brown* v. *Brown,* 167 Ill. 631.) It is but *prima facie* evidence and may be rebutted. The law makes stronger presumptions in favor of the delivery of a deed in the case of voluntary settlements than in an ordinary case of bargain and sale, (*Creighton* v. *Roe, supra,*) but where the grantees are of age, the presumption of delivery in their favor does not obtain to the extent it would if they were minors. ·(*Abrams* v. *Beale,* 224 Ill. 496; *Wilenou* v. *Handlon,* 207 id. 104.) We are of the opinion that the facts in this case tending to show that the grantors did not intend to deliver the deed at the time it was filed for record are stronger than they were in *Wilenou* v. *Handlon, supra,* and in that case this court held that there had been no delivery.

Appellant further contends that the fact that the grantor and her husband knew the deed was recorded and never attempted to have the property re-conveyed by the daughter

shows that although the deed was not originally delivered it was ratified by them thereafter, and that on the authority of *Phelps* v. *Pratt,* 225 Ill. 85, the delivery of the deed was made good by a subsequent assent and ratification, even if originally invalid for want of intention to deliver. From the evidence in the record it is clear that the grantors, as well as the grantee, understood that the deed was not to take effect in any way, even though it had been recorded, until the death of Mrs. Ackman.

On the facts presented here there is no basis for appellant's contention that equity ought not to set aside this deed because of the gross *laches* of the grantors in not attempting to have it done at an earlier date. The authorities cited on this question are not in point. The grantors have always remained in possession of the property, paid the taxes and managed it as if it were their own. No one has been misled to his injury by the failure of the appellees to begin these proceedings at an earlier date.

Appellant contends that the testimony of Mrs. Davenport is inconsistent within itself and therefore unworthy of belief, and that without her testimony there was no evidence in the record which justified the trial court in entering the decree. The weight of her testimony, as of all the testimony in the case, was for the trial court. This court will not reverse the finding of the chancellor unless it is apparent error has been committed. (*Biggerstaff* v. *Biggerstaff,* 180 Ill. 407; *Dowie* v. *Driscoll,* 203 id. 480; *Farrenkoph* v. *Holm,* 237 id. 94; *Amos* v. *American Trust and Savings Bank,* 221 id. 100.) The chancellor saw and heard this witness testify, and was in much better position to judge whether her testimony was worthy of belief than we are from a perusal of the record. We cannot say that it did not justify him in setting aside the deed.

The decree of the circuit court will be affirmed.

*Decree affirmed.*