E. W. STEPHENS *et al.* Appellees, *vs.* JESSE E. HOFFMAN *et al.* Appellants.

*Opinion filed April 23, 1914.*

1. EVIDENCE—*interest of witness, to be disqualifying, must be legal, certain and immediate.* The interest of a person which will disqualify him as a witness in his own behalf when the opposite party sues or defends as executor, administrator, heir or legatee must be a legal, certain and immediate interest, either in the result of the suit or in the record as an instrument of evidence in support of his own claims in another action.

2. SAME—*when grantor in quit-claim deed has no disqualifying interest.* The fact that the grantor in a quit-claim deed to his attorneys for fees may have the right to have the deed avoided does not constitute such a present, certain·and vested interest as disqualifies him as a witness in a suit as to the title to the property between his grantees and the personal representatives or heirs of a deceased person.

3. SAME—*when a warrantor of title is competent as a witness.* A warrantor of the title to property which is in controversy is generally incompetent as a witness for his vendee in an action concerning the title, but if the effect of the judgment is only to render it more or less probable that he will be prosecuted, the objection goes only to his credibility.

4. SAME—*rule as to admissibility of testimony of absent witness in subsequent suit.* The testimony of an absent witness in a former proceeding is admissible in a subsequent suit provided the matters in issue and the parties are the same; and the word "parties," as so used, means privies in blood, law or estate.

5. SAME—*warrantor may testify if his liability is the same no matter how the suit results.* The grantor in a warranty deed may testify in a suit involving the title to the land where the controversy is over the question of the substitution of grantees after the deed was executed, as his liability is the same regardless of who is the true grantee.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

SAMUEL C. DOOLEY, and JESSE E. HOFFMAN, for appellants.

CHARLES M. PEIRCE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action in ejectment filed in the circuit court of McLean county on January 13, 1913, by appellees, the executors and devisees under the will of William Stephens, deceased, involving a house and lot in the town of Normal, in said county. There have been two trials before a jury on the issue. After the first trial, which resulted in favor of appellees, a new trial was granted under the statute, which also resulted in favor of appellees. From the last verdict and judgment this appeal has been taken.

The record shows that in 1908 William Peeler and his mother owned the real estate in question and a vacant lot in the vicinity, which they were trying to sell. One Frank Gillespie, while at that time in the employ of the street car company in Bloomington, was using a part of his time as a real estate agent. He interested William Stephens, a man of considerable property, who resided at Carlock, in said county, in said real estate. As a result, two deeds dated November 30, 1908, covering these two pieces of property, were prepared by C. A. Dennis, a real estate agent at Normal, the grantors being Cynthia A. Peeler, William Peeler and Vivian, his wife,—Cynthia being the widow and William the son and only heir-at-law of William L. Peeler, who died seized of the said real estate a few years prior. Frank Gillespie was named as grantee in the deed to the real estate here in question and William Stephens as grantee in the deed to the vacant lot. There is a controversy as to what happened thereafter with reference to the deed to the house and lot. It was recorded in the recorder's office December 2, 1908, at 2:15 P. M., but before being filed for record two parallel red lines had been drawn through the name of Frank Gillespie as grantee and the name of William Stephens written in as grantee, following the name of Gillespie so erased. The deed to the vacant property had

been recorded at 11:50 A. M. the same day.  Concerning this latter deed there is no controversy.

. Appellants introduced evidence tending to show that Gillespie agreed to take the house and lot at $1600, (the consideration named in the deed being $2000,) and that Stephens agreed to, and did, take the vacant lot at $200; that as Gillespie did not have the cash to pay for the house and lot Stephens agreed he would sign a note for $1600, payable to the Peelers; that in consideration of this note the Peelers executed and delivered to Gillespie a deed to the house and lot with his name inserted as grantee; that Stephens owed Gillespie some money in settlement of various transactions between them, the amount not being stated either in the record or the briefs; that Gillespie was counting on this money to pay for the house, but Stephens was not ready to pay him and hence the arrangement as to signing the note; that Gillespie, on getting the deed, proceeded with Stephens to the office of Ben Mason, a justice of the peace in Bloomington, where it was planned to execute a mortgage from Gillespie to Stephens to secure the note on which Stephens was surety; that the deed from the Peelers to Gillespie was handed to the justice to give him the data for the mortgage, but having some other business he stepped out for a few moments to transact it, Gillespie also going out at the same time, leaving Stephens there and the deed on the table; that when Gillespie returned he found Stephens had left and the deed was missing; that Stephens went to Normal, where he induced Alex Keady, the notary public who had originally taken the acknowledgment to both deeds, and who was partner to Dennis, who drew the deeds, to strike out Gillespie's name and insert that of Stephens; that Stephens thereafter filed the deed, so changed, in the recorder's office.

Appellees contend that the original deed was drawn by Dennis with Gillespie's name as grantee, but that Gillespie found that he was unable to raise the money to complete the purchase.  Keady testified that William Peeler and Gilles-

pie came to him and stated that Stephens was willing to take the house and lot, and asked him if he would fix the deed accordingly without extra charge; that he (Keady) said if he made another deed he would require extra pay, to which they demurred, and the result of the conversation was that he took the old deed and crossed out Gillespie's name and inserted that of Stephens after it, making it appear as now recorded; that after, and not before, this change was made he (Keady) went to the Peeler home, and the deed was signed by Peeler and his wife and the elder Mrs. Peeler and left with them, after Keady had taken their acknowledgments and affixed his certificate. Appellees also offered testimony that Stephens gave Peeler a check for $1600. Peeler testified that this was given to take up the note, while appellees contend that it was given to pay the full consideration of the deed after the name of the grantee was changed.

The testimony, without contradiction, shows that Stephens gave Peeler a $200 check for the vacant lot. The evidence further shows that on the same day these deeds were dated, (November 30, 1908,) Cynthia A. Peeler, as administratrix of her husband's estate, assigned the insurance on the house to Stephens. The check given by Stephens to Peeler for $1600 was dated December 10, 1908, and the $200 check was dated December 2, 1908. Stephens died in September, 1909. He or his executors paid taxes on the house and lot in question since the execution of the deed. The Peelers moved to California shortly after the sale. On October 6, 1909, William Peeler and his mother and wife executed a quit-claim deed to the premises to Gillespie, stating that it was to correct a former deed, in which the grantee's name was changed, after delivery and before recording, without the knowledge and consent of the grantors or grantee, the name of William Stephens being inserted. On May 31, 1910, the Peelers executed another quit-claim deed to the premises to Stephens' executors as

grantees, which recited that it was made because a former deed from the same grantors to Gillespie was made under a misapprehension of the facts.

We gather from the briefs and record that William Stephens took possession of the property after the deed in question was executed, made improvements thereon and collected rents from the tenant till the date of his death; that thereafter for some time the tenant paid rent monthly to Stephens' representatives; that then this dispute over the title arose and there was a contest in court over the rent. In 1910 there appears to have been an ejectment suit started in the circuit court of McLean county by Frank Gillespie against appellees, the suit being tried twice. There is a controversy in the briefs as to how the second trial between Gillespie and appellees resulted. Appellants are now in possession. December 6, 1910, Gillespie quit-claimed to Dooley and Hoffman, his attorneys, who are two of the appellants here, a half interest in said premises in consideration of their legal services concerning this property. January 12, 1911, Gillespie quit-claimed to W. R. Johnson, the other appellant, the other half interest in said premises. Johnson testified that he paid Gillespie for said half interest $425 in cash and charged off a bill against him for $75 for storage and coal. Counsel for appellees claims that after the second ejectment suit between Gillespie and the appellees Gillespie deeded the property to the present appellants, seeking to make himself competent to testify, while appellants contend that Gillespie divested himself of the title in good faith, for a valuable consideration, before the present suit was commenced.

Appellants contend that the evidence is so strongly in their favor that the case should be reversed without remanding. With this we cannot agree. If there were no material errors in the record we should not be disposed to disturb the judgment.

Section 2 of chapter 51 of the Illinois statute as to evidence, (Hurd's Stat. 1911, p. 1156,) provides that no party to a civil suit or proceeding, or person interested in the event thereof, shall be allowed to testify of his own motion or on his behalf when the adverse party sues or defends as an executor, administrator, heir or legatee of a deceased person. Appellants contend that Gillespie having in good faith divested himself of all his interest in the property was a competent witness, (*Robbins* v. *Butler,* 24 Ill. 387,) and that the court erred in not permitting him to testify, while counsel for appellees contends that he still has an interest in the suit. He first argues that this interest exists because, under the law, Gillespie did not divest himself of all his interest by his quit-claim deed to his attorneys, as a deed from a client to his attorneys for fees may be voidable. (*Elmore* v. *Johnson,* 143 Ill. 513.) The general rule is, that to disqualify a witness from testifying on the ground of interest he must have a legal, certain and immediate interest in the result of the cause or in the record. (*Ackman* v. *Potter,* 239 Ill. 578, and cases cited.) The disqualifying interest must be some legal, certain and immediate interest, either in the event of the cause or in the record as an instrument of evidence in support of his own claims in another action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent. If the interest is of a doubtful nature it goes to the credibility of the witness and not to his competency. (1 Greenleaf on Evidence,—Lewis' ed.—secs. 386, 389, 390; *Feitl* v. *Chicago City Railway Co.* 211 Ill. 279; Jones on Evidence,—2d ed.—sec. 775.) A warrantor of title to the property which is in controversy is generally incompetent as a witness for his vendee in an action concerning the title, but if the effect of the judgment is only to render it more or less probable that he will be prosecuted the objection goes only to his credibility. (1 Greenleaf on Evidence,—Lewis' ed.—sec. 397; *Curtenius* v. *Wheeler,* 5 Gilm. 462;

*Illinois Mutual Fire Ins. Co.* v. *Marseilles Manf. Co.* 1 id.
236; 1 Wigmore on Evidence, sec. 578.) If the vendor
sold without covenants of title he is a competent witness
where the question of title is involved. (1 Greenleaf on
Evidence,—Lewis' ed.—sec. 397, note 3, and cases cited.)
Gillespie gave quit-claim deeds to the property. He would
not gain or lose by the direct legal operation and effect of
the judgment. Neither could the record itself be given in
evidence for or against him. His interest as against his at-
torneys, under the holdings of this court in *Elmore* v. *John-
son, supra,* is of a purely equitable nature.

Counsel for appellees further suggests that Gillespie's
evidence should not have been admitted, as section 7 of
chapter 51 of the act on evidence provides that no person
shall become competent by virtue of the release of his claim
made for the purpose of allowing such person to testify.
While there are some circumstances in the record upon
which an argument may be based that Gillespie deeded away
his property for that purpose, there is no certain or direct
evidence on that point. On this record we would not be
disposed to exclude his testimony on that ground. The
court erred in not permitting Gillespie to testify.

Counsel for appellees has filed cross-errors, insisting that
the court erred in admitting the deposition of William
Peeler, taken and introduced in one of the earlier ejectment
suits between Gillespie and appellees herein, both sides hav-
ing then taken part in his examination. The general rule
is that the testimony of an absent witness in a former pro-
ceeding is admissible in a subsequent suit, provided the
matters in issue and the parties are essentially the same in
both causes. The word "parties," as thus used, means sub-
stantially the same as privies in blood, in law or estate.
(*McInturff* v. *Insurance Co. of North America,* 248 Ill. 92;
21 Ann. Cas. 176, and note.) The term "privy" denotes
mutuality, or the same relation to the same rights of prop-
erty. Grantees are privies of their grantors. (*Yale* v. *Com-*

*stock,* 112 Mass. 268; *Towle* v. *Quante,* 246 Ill. 568.) Under this rule the parties in this case were the same in this action as in the former ejectment proceeding, so far as the admission of said deposition was concerned.

But counsel for appellees further contends that Peeler was an interested party, being grantor in the warranty deed, and therefore could not testify against appellees, as representatives of William Stephens, deceased. It is sometimes stated that a grantor in a deed containing covenants of title cannot testify in any case in which the validity of the title is involved. (*King* v. *Worthington,* 73 Ill. 161; *Hamilton* v. *Doolittle,* 37 id. 473; *Holton* v. *Dunker,* 198 id. 407.) These and other like decisions are based on the theory that it would be to the grantor's interest to maintain the title which he had covenanted to make good. There can be no question that where the effect of the covenant is to bind the witness to indemnify the party calling him against the consequences of some fact essential to the judgment, under the authorities he does have such an interest as to disqualify him from testifying against the interests of the deceased. (1 Greenleaf on Evidence,—Lewis' ed.—sec. 397.) But this is not an ordinary case as to a grantor testifying with reference to the title in himself. Peeler would be liable on his covenants the same whether the true grantee were Stephens or Gillespie. His interest, if any, in the result of the suit was equally balanced, and, so far as we can see from the present record, how it was decided would be a matter of indifference to him, so far as his liability was concerned. Under these circumstances he is not legally interested in the result of the suit. This court has held upon a somewhat similar state of facts that if the witness' interest is so equally balanced that his mind is in a state of equipoise, leaving him indifferent to the result, he is competent. (*Baker* v. *Updike,* 155 Ill. 54; *White* v. *Ross,* 147 id. 427.) The deposition of Peeler was not admitted in

evidence improperly because of either of the grounds urged in the cross-errors.

Certain other questions have been raised in the briefs, but as they will not arise on the next trial we deem it unnecessary to decide them.

For the error in refusing to admit the testimony of the witness Gillespie the judgment is reversed and the cause remanded to the circuit court.

*Reversed and remanded.*