**Frank A. Hecht, Jr., and Clara K. Hecht, Executors of the Estate of Frank A. Hecht, Deceased, Appellants, v. Joseph Powell, Appellee.**

### Gen. No. 30,329.

1. SALES—*sufficiency of tender of performance under option to purchase.* Where an offer to sell a certain quantity of whisky at a given price per barrel concluded, "Option good until July 6, 1917," an acceptance of such offer accompanied by a tender of a certified check for the purchase price, made on July 6, 1917, was within the terms of the offer.

2. SALES—*when breach of contract of sale by vendor shown.* Where an offer to sell certain whisky at a stated price per barrel gave the prospective vendee an option to accept the offer "until July 6," and on that date the vendee accepted and tendered the purchase price in a form to which no exception was then or thereafter taken, but the vendor delayed performance on various grounds from day to day until September 15 and then refused to perform, the time of the breach of the contract, for purposes of computing damages, was September 15, vendee having in effect waived his right of action based upon prior breaches.

3. SALES—*when vendee not obliged to renew tender before claiming default by vendor delaying performance after execution of binding agreement.* Where after a prospective vendee had accepted an offer to sell in accordance with its terms and made a

sufficient tender of the purchase price, the vendor, while taking no exception to the form or sufficiency of the tender, delayed performance from day to day on various grounds for two months before definitely refusing to perform, the vendee was under no obligation, before claiming a default, to renew his tender or show continued ability to perform.

4. WITNESSES—*lender of money to plaintiff for purchase from defendant's testator as person "directly interested" under Cahill's St. ch. 51, ¶ 2.* Cahill's St. ch. 51, ¶ 2, precluding persons "directly interested in the event" from testifying in an action wherein "any adverse party sues or defends as executor," does not in such an action based upon a contract of sale between the plaintiff and the defendant's testator, bar testimony by one who had agreed to lend plaintiff, at a legal rate of interest, funds with which to make the purchase, and who had participated in the negotiations between the parties, at the request of the plaintiff, who deemed himself in need of such aid on account of his defective hearing.

Appeal by plaintiffs from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed with a finding of fact and judgment here. Opinion filed March 10, 1926. Rehearing denied March 24, 1926.

TENNEY, HARDING, SHERMAN & ROGERS, for appellants.

ALTHEIMER & MAYER and MORTON A. MERGENTHEIM, for appellee; MORTON A. MERGENTHEIM, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

At the April term, 1921, the plaintiff, Joseph Powell, filed a claim in the probate court of Cook county, in the estate of Frank A. Hecht, deceased, for $55,200, the alleged difference between the purchase price of 2,300 barrels of whisky on June 29, 1917, and the market price of the whisky on September 15, 1917. On March 21, 1924, after a hearing, at which evidence was presented, the probate court allowed the claim in the sum of $48,300. From that order there was an appeal by the executors of the estate of Frank A. Hecht, de-

ceased, to the circuit court of Cook county. There was a trial *de novo* in the circuit court, without a jury, and on March 10, 1925, a judgment was entered for the claimant and against the executors of the estate in the sum of $27,851.85. This appeal is by the executors from that judgment, and the claimant has assigned cross errors. Hecht died on November 20, 1920, and the claim against his estate was filed by Powell in the Probate Court on May 7, 1921. The claim alleged that it was based on a written offer made on June 29, 1917, by Hecht to Powell, which is as follows:

"I will sell you twenty-three hundred (2,300) barrels of Waterson 1912 & 1913 Whiskies, as evidenced by the receipt of the Pleasure Ridge Park Distilling Company, of Louisville, Kentucky, and will guarantee the whiskies in the warehouse of that company and delivery on presentation of warehouse receipts, storage and taxes to be paid by me to date of sale.

"Price—Twenty-Eight ($28.00) Dollars per barrel, option good until July 6, 1917."

It alleged that Powell accepted the offer and at the time mentioned, and thereafter, was ready, able and willing to perform his part, and so notified Hecht; that Hecht failed to deliver the 2,300 barrels of whisky on July 6, 1917, and thereafter, although delivery was demanded of him and payment tendered, and on September 15, 1917, Hecht notified him, Powell, of his refusal to carry out the contract and deliver the whisky.

Damages were claimed in the total sum of $55,200, being the difference between 2,300 barrels at $28 a barrel, the contract price, and at $52 a barrel, the latter being the market price on September 15, 1917.

At the trial in the circuit court, four witnesses were called by the claimant, Powell, and one by the defendant. The only witnesses who testified on the merits of the controversy were Rosenfield and Guyton, both called by the plaintiff. Powell, being ineligible under the statute [Cahill's St. ch. 51, ¶ 2], did not testify.

Hecht v. Powell, 240 Ill. App. 124.

The evidence of Rosenfield is to the following effect: He was an officer of the Sunnybrook Distilling Company. The document in question, the writing of June 29, 1917, he first saw on that date. He had known Powell for about 20 years. Powell, as soon as he got the written offer, came to him, the witness, and asked him if he would finance it, and he told Powell he would. He, the witness, was to advance the money and get Powell's note, at seven per cent interest, and to receive the whisky receipts as collateral.

Powell asked him, as he, Powell, was very hard of hearing, to go with him to see and speak with Hecht, to act for him, Powell. He and Powell went to Hecht's office, on July 5 or 6, 1917. He, Rosenfield, had with him a certified check, payable to Hecht, for $64,400, and Powell had the written offer. There were present at that meeting Hecht, Guyton, an employee of Hecht, Powell, and himself, the witness. He, the witness, told Hecht that he was there with Powell, who desired to exercise his option and was ready to take it up. He had a certified check with him, and tendered it to Hecht. Hecht then went through his papers and found certificates for about 500 barrels. He said the balance was in the bank and would come over tomorrow, and asked him, the witness, to come over tomorrow; that he had the papers in the Continental Bank. Hecht told him how he happened to have the whisky; that he was financing a man named Flexner, and wanted to get his money out. When he, the witness, showed him the certified check, he, Hecht, did not say anything about the quality of the tender. He, the witness, went back to his office and after talking the matter over, his brother wrote on the bottom of the written offer the following: "7/6/1917. I herewith extend the option for the purchase of the above described whiskey at price hereinbefore named until July 14, 1917." The next day after the first meeting he, the witness, and Powell went again and saw Hecht, and

showed him the memorandum and said to him: "If you can't deliver today, why don't you set a date?" Hecht said: "No, I will deliver those warehouse receipts, but I cannot deliver them now"; that he was advised not to deliver "now." He saw Hecht at various times thereafter about the delivery. After July 6, he talked a number of times with Hecht, at the request of Powell, on the telephone, the first time being about July 8 or 10, then again a week after, and two weeks after, and in August, and Powell used to call Hecht up about every other day. Hecht kept putting him off from day to day, and never set any specific time. On one occasion he said he did not have it in shape, to let it go for a while. Powell was with him, the witness, on the occasions when he saw Hecht. The substance of Hecht's answers, until the middle of September, was "I cannot deliver," and then about the middle of September he said, "I won't deliver." Prior to that Hecht had not said he would not deliver it. Hecht told him on one occasion that his lawyer advised him that he had better not sell the whisky; not to deliver, that his legal position was not such that he could.

The evidence of Guyton, Hecht's employee, is to the following effect: Powell, whom he had known for many years, came to his, the witness', desk sometime in July, 1917, and he took him to Hecht's office. He did not remember exactly the conversation, but he saw the check tendered and heard some conversation about it, and heard Hecht say he could not deliver the whisky.

There was introduced in evidence for the claimant an affidavit of an employee of the National Bank of the Republic, which recited that on July 6, 1917, that bank certified a check for $64,400 drawn upon the Rosenfield account. There was, also, introduced in evidence for the claimant an affidavit of merits, sworn to and filed by Hecht in the municipal court in a suit by the claimant, Powell, against him for the same account. That

recites that Powell did not, nor anyone for him, on July 6, 1917, or at any time, accept his, Hecht's proposition; that Powell was not on that date or at any other time, ready, able and willing to carry out the proposition; that he did not, nor any one for him, on July 6, 1917, or at any other time, notify him, Hecht, that he, Powell, was ready, able and willing to perform his part; that he did not at that time or at any time, offer or tender to him, Hecht, any money or thing of value, for the purchase price of the whisky, but abandoned whatever right he had; that he did not, nor any one for him at any time, demand a delivery of the whisky; that he did not on September 15, 1917, or at any time, notify him that he, Hecht, had refused to carry out his contract by delivering the whisky; that on July 6, 1917, he, Hecht, was ready, able and willing to deliver to Powell the warehouse receipts for the whisky and to carry out the terms of his offer.

(1)   It is contended on behalf of the executors of the estate of Hecht, deceased, that the words of the offer, "Option good until July 6, 1917" are to be interpreted to mean that Hecht's offer was to be accepted before 12 o'clock p. m. July 5, and that an acceptance and tender on July 6 was too late; that as there was no tender of the consideration or acceptance by Powell prior to July 6, Hecht was not bound to deliver the warehouse receipts, and the claim should be disallowed. That contention involves a determination of the meaning, as a matter of chronology, of the word "until." The evidence, undoubtedly, establishes—chiefly by means of the affidavit of Huitsing, an employee of the National Bank of the Republic, which recites that on July 6 the Bank certified a certain check drawn upon the account of Rosenfield Brothers & Company in the sum of $64,400—that the tender was first made to Hecht on July 6. That conclusion is supported, also, by the fact that the claim filed in the probate court stated that the tender was made on that date.   It fol-

lows, therefore, that if the word "until," as used in the offer of July 29, excludes any time beyond July 5, the tender was too late and the offer had lapsed. There is no doubt that the word "until," without a qualifying context, frequently excludes the day to which it refers. On the other hand, very frequently it is used in such a way as, obviously, to include the day to which it refers. Strictly etymologically, it is a word of exclusion, but as commonly used, it is just as likely to be used in an inclusive as an exclusive sense. Such being the case, it is the duty of the court to give it the meaning which the context, situation of fact and conduct of the parties make reasonable.

Counsel for the executors cite *Webster v. French*, 12 Ill. 302; *Richardson v. Ford*, 14 Ill. 332; *Byrne v. McCarthy*, 221 Ill. App. 139, and a number of decisions of foreign courts. An examination of the decisions of this State does not show, however, that the word "until" is necessarily a word of exclusion. Both the *Webster* and the *Byrne* cases disclosed contextual facts which justified concluding that the word was used as one of exclusion. Here, the evidence shows that when the tender to Hecht was made on July 6, Hecht made no objection on the ground that the offer had expired, but looked through his papers and found certificates for about 500 barrels of whisky, and told Powell and Rosenfield that the balance was in the bank, and intimated that he would have them the next day, and, accordingly, asked those making the tender to call on the next day.

The evidence of Guyton, Hecht's employee, is that he saw the check tendered and heard some conversation about it, and that Hecht said he could not deliver the whisky, and Hecht in his affidavit of merits, which was sworn to and filed by him in the municipal court, set up "that on July 6th, 1917, he, Hecht, was ready, able and willing to deliver to Powell the warehouse receipts for the whisky and carry out the terms

of his offer." Such being the circumstances we feel bound to conclude that the acceptance and tender made by Powell on July 6 was seasonable and within the terms of the offer.

(2) It is contended for the executors that if any breach of the contract occurred, it took place on July 6, and that the damages should be measured as of that day; then, on the other hand, it is contended on behalf of Powell, the claimant, that Hecht asked for and received an extension of time to deliver, no definite time of delivery being set, and that the breach occurred only when Hecht refused to deliver.

From June 29 to July 6, there was outstanding merely an offer by Hecht to sell a certain amount of whisky at a certain price. In and of itself, that offer, of course, was not a contract; it might never be accepted; it was in the eyes of the law merely something potential, but not creative by itself, without more, of any legal obligation on anybody. But not being withdrawn and, therefore, presumably still outstanding as an offer, when Powell and Rosenfield went to Hecht on July 6 and offered acceptance, that is execution on Powell's part, and tendered the certified check for $64,400, there, for the first time, came into being a legal and binding contract, and one of the obligations of that contract was, as to Hecht, that he should at once deliver to Powell the "receipt" or indicia of ownership. As to Powell, having made a good tender, the contract was at once executed in full as to him, and he was without further obligation. It was a unilateral contract, executed on the part of Powell, and with an obligation outstanding on Hecht to turn over the receipt to Powell.

That being the situation, when Hecht then refused the tender of Powell and refused to deliver the "receipt," he, Hecht, put himself at once in default, and there was then at once a breach by him, unless contemporaneously the two parties mutually agreed, or

from their conduct must be assumed to have agreed that the time for performance should be extended. Although the offer was in writing, the time for performance might be extended by parol. Williston, Contracts, Vol. 2, sec. 856. *Globe Brewing Co. v. American Malting Co.*, 152 Ill. App. 194; *Kissack v. Bourke*, 224 Ill. 352; *Vroman v. Darrow*, 40 Ill. 171; *Moses v. Loomis*, 156 Ill. 392; *Baker v. Whiteside*, Breese (1 Ill.) 174; *Wadsworth v. Thompson*, 3 Gilm. 423; *Kimball v. Tooke*, 70 Ill. 553; *Palmer v. Bennett*, 96 Ill. App. 281.

The question then arises: What does the evidence show as to an understanding, if any, between them at that time, or as to their mutual conduct in the matter? If it shows no agreement as to the time to which the performance was to be extended, no meeting of minds on that subject, or no waiver of time of performance, then Powell had a right of action for damages for a breach *eo instante;* that is, at the close of the meeting on July 6.

The trial judge held that the evidence showed that Powell was justified in assuming that sometime in August, Hecht "was then breaching his contract," and in computing damages, fixed upon August 10 as the time of the breach. Counsel for Powell claim that the evidence points to September 15 as the time of the breach, while, on the other hand, counsel for the executors insist that if there was any breach, it occurred on July 6, and that the damages, if any, are to be measured as of that day.

The conversation which took place on July 6, at the time of the tender, between Rosenfield and Hecht, shows that after the tender had been made, Hecht went through his papers and found certificates for about 500 barrels, and said that the balance was in the bank and would come over tomorrow, and asked Powell and Rosenfield to come back the next day. And that was the substance of all that transpired on July 6, save that Guyton, Hecht's employee, testified that he heard

Hecht v. Powell, 240 Ill. App. 124.

Hecht say, though of the day he is not sure, that he could not deliver the whisky. As there is no evidence that Rosenfield or Powell said anything to Hecht after he asked them to come over tomorrow, but that they went away, and by their silence, did not necessarily repudiate Hecht's proposition, it may be said that those circumstances evidence a meeting of minds to the effect that the time for performance on the part of Hecht was extended to the next day, and that Powell waived his right to claim a breach at that time. The evidence shows that on the next day Powell and Rosenfield went with the memorandum made by Rosenfield's brother providing for an extension of the offer to July 14; that when Rosenfield showed Hecht that memorandum and asked him the question, "If you can't deliver today, why don't you set a date?" Hecht answered, "No, I will deliver those warehouse receipts, but I cannot deliver them now," that he was advised not to deliver "now." That shows that Powell was still waiving his right to claim a breach of the contract, and that Hecht so understood it, and therefore that the time of performance was still being extended. The evidence further shows that there were numerous telephone communications between the parties, and that not until the middle of September was it understood between the parties that Hecht would not deliver the receipts provided for in the contract. Rosenfield testified that at that time Hecht said: "I won't deliver." It is true that the evidence does not show that there was at any time after July 6 or July 7, any express oral agreement of extension to a particular time, but nevertheless the conduct of the parties does show clearly that there was a mutual understanding that the written date of performance was being waived and the time extended from time to time; that there was no actionable breach until finally, in the middle of September, Hecht categorically said that he would not carry out his contract.

In *Globe Brewing Company v. American Malting Co.*, 152 Ill. App. 194, it was held that an extension or waiver of the time of performance does not have to be shown by an express agreement, but that it may be inferred from facts indicating an intention to waive; that is, from the conduct of the parties; and that to bring about an extension or waiver a new consideration is not essential, citing *Frost v. Thompson*, 18 Ill. App. 410; *Vroman v. Darrow*, 40 Ill. 171.

If a seller tells a buyer that he cannot deliver on time and asks indulgence, and the buyer, by his conduct, gives it, the default may be said to be temporarily condoned, and if later the seller tells the buyer definitely that he refuses to deliver, there is then as of that time a breach of the contract. In our judgment there was a breach of the contract by Hecht on September 15, 1917, and not until then.

(3) It is further contended for the executors that it was necessary for Powell to make a tender or show his ability to carry out his promise after July 6; that is, before he could require Hecht to make a delivery he must again tender his purchase price, or show his ability to perform. That we think is untenable. Powell had already made a good tender, and the evidence shows that no question arose thereafter during the negotiations with the parties as to Powell's ability and willingness to carry out his part of the contract.

(4) It is further contended that under paragraph 2 of chapter 31 (Cahill's St. 1923), Rosenfield was disqualified as a witness. The statute provides that: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein * * * when any adverse party sues or defends as * * * executor." In *Stephens v. Hoffman*, 263 Ill. 197, the court considered the meaning of the words, "directly interested," and said that the witness "must have a legal, certain and immediate interest in the result of the cause or in the

record''; that "the disqualifying interest must be of some legal, certain and immediate interest, either in the event of the cause or in the record, as an instrument of evidence in support of his own claims in another action." *Ackman v. Potter*, 239 Ill. 578; *Flynn v. Flynn*, 283 Ill. 206; *McClure v. Otrich*, 118 Ill. 320.

Considering the way in which the court has interpreted paragraph 2 as to what interest disqualified, we are of the opinion that the fact that Rosenfield had agreed to lend Powell the money at a legal rate of interest in order that he might purchase the whisky, and, also, because Powell was hard of hearing, had taken part in the negotiations with Hecht, did not make him so directly interested in the lawsuit in question as to bring him within the inhibition of paragraph 2, chapter 51.

(5)   The breach of contract having occurred, in our judgment, on September 15, 1917, the question arises as to the amount of damages that should be allowed. Four witnesses were called to testify to the market price per gallon in September, 1917. Rosenfield said from $0.95 to $1.10; Oberfelder, from $1 to $1.20; Werner from $0.90 to $0.95, and Hinde from $0.95 to $1. With that as the evidence, and taking the minimum figures given, which show an average of $0.95 per gallon, in our judgment the market price on September 15, must be taken at that figure. The evidence shows that an average barrel of whisky contains 48½ gallons, making a total, for the 2,300 barrels, of 111,550 gallons. Multiplying that number of gallons by the market value of $0.95 makes $105,972.50, and subtracting from that amount $64,400, the sale price, leaves $41,572.50 as the difference between the sale price and the market price on September 15, 1917, and being, therefore, the amount of the damages for which the claim of Powell should be allowed.

The judgment, therefore, will be reversed with a finding of fact, and, the cause having been tried with-

out a jury, judgment will be entered here in the sum of $41,572.50 in favor of the claimant, Joseph Powell, and against Frank A. Hecht, Jr. and Clara K. Hecht, as executors of the estate of Frank A. Hecht, deceased. *Reversed with a finding of fact and judgment here.*

THOMSON, P. J., and O'CONNOR, J., concur.

Finding of fact: We find as a fact that the contract was broken by Hecht on September 15, 1917.