AMOS SHIPLEY, Appellee, *vs.* JOHN M. SHIPLEY *et al.,* Appellants.

*Opinion filed October 24, 1916.*

1. EVIDENCE—*when children who are defendants to bill by their father to quiet title are competent witnesses in their own behalf.* Children who are defendants to an original bill to quiet title are competent witnesses in their own behalf when the complainant is not suing as executor, administrator, heir or legatee of any deceased person but as grantee in a deed from his deceased wife, and the children (and their respective husbands and wives) may testify in their own behalf on their cross-bill for partition though some of the adverse parties to the cross-bill are heirs to the estate, as a partition proceeding merely seeks to distribute the estate and not to diminish or destroy it.

2. STATUTE OF FRAUDS—*when Statute of Frauds is not involved in proceeding to quiet title.* The Statute of Frauds is not involved where the complainant in a bill to quiet title does not base his relief on a parol agreement for the sale of lands or an interest therein, but on the ground that the land was conveyed to him by deed duly signed, acknowledged and delivered but which was destroyed before being recorded.

3. DEEDS—*a valid deed must be signed, sealed and delivered— burden of proof.* A valid deed to convey real estate must be signed, sealed and delivered, and the burden of proof is upon the one relying on such deed, in a bill to quiet title, to show that the instrument upon which he relies was executed and delivered as required by law.

4. SAME—*when deed to take effect on death of grantor is void as a testamentary disposition of property.* A deed must take effect upon its execution and delivery or not at all, and if it is only to take effect on the death of the grantor and is not delivered during the lifetime of the grantor it is void as a testamentary disposition of property if not executed in compliance with the Statute of Wills; but the delivery of the deed in the grantor's lifetime changes its effect so that it is no longer of a testamentary character.

5. SAME—*what necessary to constitute a valid delivery of deed.* To constitute a valid delivery of a deed the grantor must absolutely divest himself of control over it, and if he retains custody or control over it in any way there is no valid delivery.

6. SAME—*delivery of deed is a matter of intention and may be shown by competent evidence.* Delivery of a deed is a matter of

intention, and evidence on the question of delivery does not contradict or vary the terms of a deed but bears on the question whether the instrument ever had a legal existence; and while declarations of the grantor in the absence of the grantee cannot be admitted for the purpose of invalidating the deed they may be admitted to show the intention to deliver, and such intention, as well as the intention to accept the deed, may be shown by direct evidence or may be presumed from the acts and declarations of the parties.

7. SAME—*parol evidence as to contents and existence of deed must be convincing.* Where the deed itself is not introduced in evidence and parol testimony regarding its existence and contents is all that can be obtained, such testimony must be clear and convincing in every respect.

APPEAL from the Circuit Court of Edgar county; the Hon. WALTER BREWER, Judge, presiding.

· W. H. CLINTON, and SHEPHERD, TROGDON & DOLE, for appellants.

O'HAIR & RHOADS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

In July, 1915, Amos Shipley, the appellee herein, filed a bill in the circuit court of Edgar county asking to have the title to an eighty-acre farm in that county quieted and declared in his name in fee simple. Appellee's eight children,—five sons and three daughters,—were named as defendants. The three daughters answered and also filed a cross-bill, both pleadings denying that their father had a fee simple title in the land. Four of the sons joined with their father in an answer to the cross-bill, representing that the land belonged to the father, as he alleged. The other son answered the original bill, denying that the father should have the title quieted in him, but did not join in the cross-bill with his sisters. A decree was entered in accordance with the prayer of the original bill as amended, finding the fee simple title in appellee, free and unincumbered in any manner, and dismissing the cross-bill for want of equity.

From that decree this appeal was prayed by the oldest son and the three daughters.

In February, 1889, this eighty-acre farm was conveyed by warranty deed to Sarah J. Shipley, wife of appellee, by John and Johanna Fitzpatrick. Of the $2700 purchase price $300 was paid by Mrs. Shipley with money she had received from her father. The title was taken subject to two mortgages. Before this bill was filed these mortgages, after being renewed, were paid off. The evidence is somewhat conflicting as to the sources from which the money for that purpose was obtained, but it is apparent that a large proportion of it came from the proceeds of the farm crops. While the land stood in the name of the wife until her death, in the early part of 1915, it seems that the husband paid most, if not all, of the taxes and had charge of the farm, though there is testimony tending to show that the sons, during the later years at least, did much of the farm work. At the time of this litigation the children were all of age and married. Their names were: John M., Clark L., Amos F., Nathan O. and Courtley C. Shipley, and Cora D. Guymon, Lucy C. Adams and Otha B. Qualkenbush.

Counsel for appellee contend that the land was placed in the name of the wife at the time it was purchased so that she would be accepted as security, along with her husband, for any money he might wish to borrow in carrying on his farming operations, and that at the time the deed was made to her she executed and delivered to him a warranty deed for the land; that the deed contained a provision that possession should not be taken thereunder until the death of the wife,—that is, that the deed executed by her to him conveyed the title to him subject to a life estate in her. The testimony in the record shows that at or about the time the deed conveying this property to the wife was executed, in 1889, a deed, or an unsigned draft of a deed, was prepared conveying the property from the wife to the husband, subject to a life estate in her. The testimony also shows that

in 1903 or 1904 that instrument was destroyed. There is, however, the most serious conflict in the evidence as to whether this deed from the wife to the husband was ever signed by her, and if signed, whether it was ever delivered by her to him. The wife was seriously ill in 1903 and for some time was not expected to live. The testimony of two daughters and the oldest son, John, is to the effect that the mother asked to have John take this deed and keep it, and if she got well he was to give it back to her and she would destroy it, and if she died he was to destroy it. Two daughters testified that one of them got this deed at this time from their mother's trunk. John did not know from where it was obtained when his mother gave it to him. One of the daughters testified that she read the deed at that time and that it was not signed by anyone. The second daughter testified that she heard her sister read it aloud to the mother and that no names were read as signed to it and that she understood at that time it was not signed by anyone. John testified that he did not remember whether it was signed or not. The second son, Dr. Shipley, a practicing physician, testified that a year or two before his mother was sick he had heard a dispute between her and one of his sisters about this deed and looked it up then and found it in his father's trunk, along with the deed conveying the land to his mother; that he compared the two deeds, and the description of the property was the same in both, and that the deed to his father was executed by both his father and mother, the acknowledgment being taken by the same justice of the peace who took the acknowledgment in the deed to his mother; that he was present at the time his oldest brother, John, took the deed, when John and the two sisters claim that the deed was given to John by the mother. The doctor at that time was working on the farm, and we should judge from his age and the other testimony that he had not then been licensed to practice. He testified that his mother did not give the deed to John; that the girls found it and

gave it to John, and that John told him that he was going to take it home and keep it; that this occurrence took place at five o'clock in the afternoon. The sisters testified that the incident concerning the deed took place in the morning, and that the doctor was not present and knew nothing about the mother's talk with the three children who were there, except as it was told to him afterwards. There is also testimony of one or two other witnesses that tends to support the testimony of the two sisters that the doctor was not present at his parents' home on the morning of the day in question. John was not asked directly as to whether the doctor was present at the interview with the mother. He did testify, however, that his two sisters were with him at the time his mother gave him the deed. The mother recovered partially from her serious illness, but was in poor health, apparently, from that time until her death, though up and around most of the time. It is conceded by all parties that the deed was destroyed not long after this serious illness. The weight of the evidence is to the effect that it was destroyed by the mother or under her direction. The two youngest sons testified that after the deed was destroyed they heard their mother promise their father, appellee herein, that she would execute and deliver to him another deed of the same kind as the one destroyed. One of the sons also testified that the mother said that this deed to the father had been delivered to him. The three daughters each testified that they heard their mother say that she had never delivered the deed to the father and never intended to do so. A letter was introduced in evidence dated January 5, 1904, which it was testified was written by the mother and sent to one of her daughters in Indiana, which reads, in part, as follows: "Well Otho I am Going to Tell you A Bout That Deed I Burned it At John Paw had it Mad an Tried to Make me sign it He Jaws Me About giving It To Him I Burned it So he could not make me Sign It or cause Me Any Trouble with it I Have Paid All that Has Been Paid

on The Place If I Dye Before he does I Want you Children To Have The Place.'" Some of the daughters testified that the father hunted among his private papers, after the death of his wife, to find this deed; that when he found it was destroyed he said, in effect, that anyone who had any sense would know that it wasn't necessary to destroy the deed,— that it was valueless. One of the daughters and her husband testified that shortly before they were married they heard the father trying to get the mother to execute a deed to him, and she refused, saying that she had done as much to pay for the farm as he had. There is testimony of another son-in-law that appellee had told him, some years before the mother's death, that Mrs. Shipley owned the farm. There is also testimony in the record of Dr. Brackney, a brother of Mrs. Shipley, who was called from his home in Indiana to assist in treating her in her serious illness in 1903, that she talked with him then about this deed and told him that she never intended to deliver it. The evidence tends to show that the mother did not want to convey the property to the husband because she wanted to leave it to the children, and some of the children,—especially the daughters,—feared that if the mother died the father would marry again, and if he owned the property he would disinherit them. Dr. Shipley testified that he owed his father about $1200, and also that some of the other sons were more or less in debt to the father. There is no evidence in the record that any of the daughters had ever borrowed money from either of their parents.

Most of the testimony of the sons and daughters, of Dr. Brackney and of the sons-in-law was objected to on the trial as incompetent, as was also the letter written by the mother in 1904, but it was all admitted subject to objection. In the briefs in this court no authorities of any kind are cited as to the admissibility of any of this testimony, and while it is suggested in the briefs that some of this testimony is incompetent, no argument is made on this

question. The common law rule as to the competency of parties to a suit has been changed by section 1 of our statute on evidence. Interest of a party, as a general rule, no longer disqualifies but only goes to his credibility as a witness. (*Ackman* v. *Potter,* 239 Ill. 578.) The children who were defendants in the original bill were clearly competent, under the statute, to testify in their own behalf, since their father, the adverse party in the bill to clear title, was not suing as the executor, administrator, heir, legatee or devisee of any deceased person. They were competent to testify in their own behalf in the cross-bill asking for partition, since the object of this bill was to distribute the estate and not to impair or diminish it, though some of the adverse parties to the cross-bill were heirs to the estate. (*Pigg* v. *Carroll,* 89 Ill. 205; *Treleaven* v. *Dixon,* 119 id. 548.) The sons of Mrs. Shipley, in testifying to defeat the record title in controversy, were so testifying against their own interest, hence they were competent. (*Dyer* v. *Martin,* 4 Scam. 146; *Smith* v. *West,* 103 Ill. 332; *Ackman* v. *Potter, supra.*) The children being competent, their respective husbands and wives were also competent.

Counsel for appellants insist that appellee, under the Statute of Frauds, ought not to recover. This question was raised properly by the pleadings. We do not perceive how that statute applies here. Appellee does not base his right to relief on a parol agreement for the sale of lands or an interest therein, but on the ground that the land was conveyed to him by deed duly signed, acknowledged and delivered but which was destroyed before being recorded. The burden of proof rested upon appellee to show that the instrument upon which he relies was executed and delivered as required by law. A deed valid to convey real estate must be signed and sealed. (Hurd's Stat. 1916, chap. 30, sec. 1, p. 599; *Williams* v. *Williams,* 270 Ill. 552; *Barrett* v. *Hinckley,* 124 id. 32; *Barger* v. *Hobbs,* 67 id. 592.) It must also be delivered. (*Weber* v. *Christen,* 121 Ill. 91;

*Skinner* v. *Baker,* 79 id. 496.) Where a deed has been actually delivered to a grantee in the life of the grantor, even though it contains a provision that it is not to take effect until the grantor's death, it will be sustained as a present grant of a future interest. (*Hathaway* v. *Cook,* 258 Ill. 92.) The delivery of a deed in the grantor's lifetime changes the effect of an instrument which might but for the delivery be of a testamentary character. (*Nowakowski* v. *Sobeziak,* 270 Ill. 622.) To constitute a valid delivery of a deed the grantor must absolutely divest himself of control over it, and if he retains custody or control over it in any way there is no valid delivery. A deed must take effect upon its execution and delivery or not at all. If it is only to take effect on the death of the grantor it is void, as not being in compliance with the Statute of Wills as to the testamentary disposition of property. (*Benner* v. *Bailey,* 234 Ill. 79.) The delivery of a deed is almost wholly a matter of intention and may be shown by any competent evidence. (*Noble* v. *Fickes,* 230 Ill. 594; *Potter* v. *Barringer,* 236 id. 224.) Evidence on the question of delivery does not contradict or vary the terms of the instrument, but bears on the question whether the instrument, in effect, ever had a legal existence. The declarations of a grantor in a deed when the grantee is not present cannot be admitted for the purpose of invalidating the deed, but such declarations are competent for the purpose of showing the intention of the grantor as to the delivery of the deed. The intention to deliver, on the one hand, and of acceptance on the other, may be shown by direct evidence or presumed from the acts and declarations of the parties constituting a part of the *res gestæ,* and in a like manner the presumption of delivery may be rebutted and overcome by proof of a contrary intention or of acts and declarations from which the contrary presumption arises. (*Price* v. *Hudson,* 125 Ill. 284; *Noble* v. *Fickes, supra; Potter* v. *Barringer, supra.*) When the deed itself is not introduced in evidence and parol

274 — 33

testimony regarding its existence and contents is all that can be obtained, such testimony must be clear and convincing in every respect. "Where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss and its contents should be strong and conclusive before the courts will establish a title, by parol testimony, to property which the law requires shall pass only by deed or will. * * * It is the policy of the law, adopted with a view to prevent frauds, that title to lands shall pass only by written instruments, and the difference is more in name than in fact between giving effect to a parol conveyance of lands and establishing a title to lands under an alleged lost deed, upon parol testimony of its contents and loss, unless the proof be clear and conclusive." (*Thomas v. Ribble,* 24 S. E. Rep. [Va.] 241.) "When an attempt is made to batter down recorded deeds by oral evidence of non-existing and unrecorded deeds, the oral evidence must be clear and strong, satisfactory and convincing, or it will not preponderate." (*Connor* v. *Pushor,* 86 Me. 300; 29 Atl. Rep. 1083.) "Parol proof of the contents of lost deeds must be so clear and positive as to leave no reasonable doubt of the substance of the material parts of the paper." (*Bennett* v. *Waller,* 23 Ill. 97.) When the parties put their contract in writing, its terms and conditions are directed and limited by the instrument itself. The safety which is expected from such documents would be greatly weakened if, when they are lost, their contents could be established upon uncertain and vague recollections of witnesses. *Rankin* v. *Crow,* 19 Ill. 626.

In our judgment the evidence in this case regarding the material parts of this alleged lost deed is not sufficiently clear and convincing to sustain the decree. No evidence is found in the record as to whether the deed bore a seal, and the evidence is not at all clear as to the conditions of the deed with reference to the interest that the mother retained

therein. The testimony as to what land was included in the alleged lost deed is not strong. The only evidence on which to support the decree on these points is that of Dr. Clark Shipley, who based his testimony on a reading of the deed some fourteen years before. There was no direct testimony other than that of this witness that the deed was ever signed or acknowledged by the mother, and there is positive testimony by one of the daughters that it was not executed. Furthermore, even if it be conceded that the deed was executed, we do not think the weight of the testimony, fairly considered, supports the conclusion that it was ever delivered.

It is earnestly argued by counsel for appellee that if the deed had not been executed and delivered there would have been no necessity for the mother or the daughters to be so anxious about its destruction. In view of the record before us this argument cannot be controlling. The testimony on behalf of both parties in the record is conflicting and irreconcilable on more than one point. Why should appellee be searching for the deed among his own papers after his wife's death if he had known years before that it was destroyed? The testimony also shows that he tried to get his wife to execute a deed to replace the one destroyed. The reasons given in the testimony on behalf of appellee as to why the land was conveyed to the wife instead of the husband when it was purchased, in 1889, are no more consistent than the testimony why the wife and daughters would place such importance upon an unsigned deed being destroyed. How could the wife help her husband in borrowing money to stock the farm by having the deed in her name, more than the husband himself would be assisted if he had the property in his name? Beyond question the testimony on behalf of appellants was in many respects not consistent with itself, but it may also be said that the testimony on behalf of appellee is contradictory and unsatisfactory. We cannot hold, on this record, that the proof as to the con-

tents, execution and delivery of the alleged deed is as clear and convincing as the law requires. The circuit court should have held that the title to this land was in the heirs of Mrs. Shipley, subject to the dower interest of the husband.

The decree of the circuit court must be reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*