(No. 34238.—

LAURA VIRGINIA HOLLAND, Appellant, *vs.* LUCILLE RICHARDS *et al.*, Appellees.

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

BRISTOW, J., and KLINGBIEL, C.J., dissenting.

ORIS BARTH, of Urbana, and LAWRENCE R. HATCH, of Champaign, for appellant.

HARRIS & HARRIS, of Lincoln, (HOMER B. HARRIS, SR., THOMAS M. HARRIS, and HOMER B. HARRIS, JR., of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This appeal from the circuit court of Logan County involves the ownership of 190 acres of farm land formerly owned by John Richards, deceased.

The plaintiff is Laura Virginia Holland, the only child of Helen Richards Holland, deceased, one of John Richards' four daughters. His three other children, Lucille Richards, Florence Richards Graham, and Gertrude Richards Honaker, are defendants.

On a previous appeal, we upheld the complaint as against the contention that it showed on its face the plaintiff was guilty of *laches.* The cause was remanded for answer and trial. (*Holland* v. *Richards,* 4 Ill.2d 570.) There has now been a master's hearing, with both the report and the court's decree adverse to the plaintiff, who perfects the instant appeal.

The conflicting claims revolve about two deeds, both executed by John Richards and his wife and both purporting to transfer title to this property.

The first deed, upon which the plaintiff relies, was executed on June 28, 1926, as a part of a "family settlement." This deed was never recorded and has since been lost or destroyed, the last known person to have had physical custody thereof being John Richards. However, the defendants do not deny the existence of the deed or challenge its validity, but they do disagree with the plaintiff regarding its terms. The plaintiff contends the deed reserved a life estate in John Richards and his wife, and then gave a life estate to Helen (the plaintiff's mother) and "remainder in fee simple to the children of her body" (*i.e.,* the plaintiff, Helen's only child). The defendants maintain the deed gave Helen the fee outright.

The defendants rely upon a deed executed March 18, 1933, and assert that this later deed is controlling. They say that Helen surrendered the 1926 deed to John Richards with the object of revesting title, and because of this the latter acquired the equitable title which he passed on to the defendants by the 1933 deed.

The plaintiff's answer to this is that her mother never revested title, even though the grantor Richards did obtain

(from Helen's husband) possession of the deed. And she insists further that even if it be assumed that Helen did surrender the deed to John Richards with the object of revesting title, this would not disturb the plaintiff's own vested remainder interest acquired by virtue of the prior 1926 deed.

As we view the case, the dispositive question is whether the 1926 deed vested the remainder interest in Helen's children or whether Helen received the fee-simple title. If the former be true, then any alleged surrender of the deed by Helen, a life tenant only, could not deprive the plaintiff (as Helen's only child) of her title to the land.

We summarize the uncontradicted evidence bearing on this issue.

In 1926, Mr. and Mrs. John Richards owned 1380 acres of Logan County farm land, plus residence property in Lincoln. On June 28, 1926, they agreed upon a "family settlement" in which all but 40 acres of this land was divided among their four children. An attempt was made to equalize the shares, but because the quality of the land was not uniform, acreage allocations varied.

Briefly, the division was as follows:

To Helen: a deed to the 240-acre "Home Place"; and a deed to the 190 acres here in dispute, 160 acres of which was known as the "Martin Farm," the other being 30 acres of pasture land adjacent thereto and forming a part of the "Home Place." In addition, Helen was then promised an additional 40 acres. In all, these properties have a present value of approximately $102,500.

To Lucille: a deed to a 255-acre farm and a deed to the residence property in Lincoln, totaling about $139,250 today.

To Gertrude: a deed covering two farms, encompassing 335 acres, with a current valuation of around $135,500.

To Florence: a deed to a 320-acre farm having a present valuation of approximately $159,250.

All of the foregoing deeds, with the exception of the deed to the property in question (the 160-acre "Martin Farm" and the 30 acres of pasture land) were recorded and copies thereof are in this record. And all of these recorded deeds which pertain to farm land are similar in form, in that each reserves a life estate to Mr. and Mrs. Richards, the grantors, and then gives a life estate to a named daughter, with the "remainder in fee simple to the children of her body." The residence property was given to Lucille in fee, and, as aforesaid, the determinative issue here is whether the unrecorded deed was similar to the others or gave the entire fee to Helen.

In our opinion, the overwhelming weight of the evidence establishes that the limitation in this deed was similar to the others in that the grantors reserved life estates to themselves, and gave Helen a life estate with "remainder in fee simple to the children of her body."

First, the only evidence as to the language of the deed comes from the plaintiff and her father, Logan Holland, the husband of Helen. Of all living persons they were the only parties who had seen it, and both testified that it was so worded. The defendants not only denied having the deed in their possession, but said they had never seen it.

Second, one of John Richards' former tenants, a disinterested witness, furnished corroboration for the testimony of the plaintiff and her father. This witness, Elza Stevens, said John Richards had discussed the 1926 family settlement with him, and among other things, told him he had given the "Home Place" and the "Martin Farm" to "Helen and Virginia" (*i.e.,* to his daughter, Helen, and his granddaughter, the plaintiff). The defendants could muster no evidence to establish their contention that the deed gave the fee to Helen outright.

Third, the grant of a life estate to the daughter with "the remainder in fee simple to the children of her body" was consistent with the general plan of the family settle-

ment. For, as noted, in all other cases the farm land was so conveyed.

Finally, there are other minor evidentiary matters which support the plaintiff's position, and significantly, the defendants produced no positive evidence in conflict therewith. Virtually the only point advanced by them in this regard is based upon a doubtful inference. They point out that the "Home Place" and the "Martin Farm" adjoined each other. Hence, the argument runs, if the grantors intended to create identical limitations, the attorney, a prominent Logan County attorney now deceased, would surely have used but one deed for that purpose. This is not a necessary implication, for there could be many reasons why an attorney would choose to have two deeds, especially in view of the fact that two distinct farms were involved.

The conclusion is inescapable that the remainder interest vested in the plaintiff and has never been dislodged. All of the life tenants having died, she is entitled to have title confirmed in herself and the 1933 deed removed as a cloud on her title. She was not guilty of *laches,* having filed her complaint within a month of her mother's death, (see *Holland* v. *Richards,* 4 Ill.2d 570,) and the decree must be reversed and the cause remanded for the entry of a decree in conformity with this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE BRISTOW, dissenting:

I am constrained to dissent from the majority opinion on the ground that it omits a substantial portion of the operative facts, and effects a glaring miscarriage of justice in disregard of established rules of law.

According to the record, the grantor's scheme of distribution, his conduct, the statements in the letters of his daughter Helen, plaintiff's mother, and the conduct of the able attorney who drafted the instruments, all indicate

clearly that the grantor conveyed to his daughter Helen a fee interest in the 190 acres granted in the missing and unrecorded deed, rather than a life estate with remainder in the plaintiff, as the majority opinion states. Moreover, the evidence also indicates that Helen returned the deed to her father in consideration of the $11,000 given by her father to her and her husband in 1931 to pay their debts, a fact not even mentioned in the majority opinion. The return of the deed, with the intention of revesting title in her father gave him an equitable title to that fee, which he granted by a recorded deed to the defendants, who are entitled to the property. These conclusions, as found by the master, are supported by the overwhelming weight of the evidence, and are in accordance with the law.

Our case law is replete with statements of the rules that a plaintiff seeking to establish the existence and contents of an unrecorded deed by parol testimony must bear the burden of making such proof in a clear and conclusive manner, (*Shipley* v. *Shipley*, 274 Ill. 506,) and that a decree of a chancellor, in accordance with the findings of a master who heard the testimony, will not be disturbed unless it is manifestly against the weight of the evidence. *Rizzo* v. *Rizzo*, 3 Ill.2d 291, 299.

Notwithstanding these established rules, the majority opinion has set aside the master's finding and held that the contents of the deed vested a life estate in plaintiff's mother and a remainder in plaintiff, substantially on the basis of her recollection of the contents of the deed, viewed on a single occasion some 20 years before, when she was then 11 years old, and on the basis of her father's self-serving testimony, which was impeached and contradicted throughout the record, as we shall show. Such testimony, in the opinion of the majority, constitutes "the manifest weight of the evidence," and the requisite clear and conclusive evidence to establish the contents of an unrecorded deed, and to set aside recorded titles. With this I cannot agree.

This court has unequivocally stated that it will closely scrutinize and give limited weight to the testimony of an interested witness respecting the contents of a missing instrument. (*Kerr* v. *Russell,* 69 Ill. 666; *Finley* v. *Felter,* 403 Ill. 372.) In the *Finley case* the sole issue was whether the plaintiff grantor's name, appearing on the recorded but lost deed, was a forgery, and plaintiff's claim of forgery rested entirely on his testimony and that of his attorney who filed the suit, just as plaintiff's claim herein rests upon her testimony and that of her father as to the phraseology of the lost deed. The court stated: " 'The proof to sustain such a charge is required to be, however, of the clearest, strongest and of the most convincing character, and by disinterested witnesses. It shocks the moral sense of community to say, the supported testimony of an interested witness, who sees a fortune in his success, shall destroy the deliberate act of an officer appointed by law to do the act he certifies, under the solemn sanctions of an oath, he has done.' * * * Applying this rule of law to the instant cause, we find that the most interested person in the proceeding, the plaintiff himself, has given the most direct testimony to support the allegation that the signature on the deed was forged. It cannot be said, under any stretch of the imagination, that the plaintiff is a disinterested witness falling within the above-stated rule."

It is not surprising that the master did not give much probative value to plaintiff's testimony, which was not only self serving, but was based upon her observation of a deed 20 years before, when she was only a child of eleven. The master no doubt took cognizance of the fact that although plaintiff was positive in her testimony on August 9, 1955, as to the contents of the deed, yet on December 7, 1953, when she filed her verified complaint, and again on February 3, 1954, when she filed her verified amendment, she was not so positive, for in both pleadings she stated that

her mother received either a life estate or a fee simple interest.

Similarly, even if the self-serving testimony of plaintiff's father had not been impeached, his statement of the contents of the deed, based upon an observation some 20 years before, was also of limited probative value and insufficient to establish the contents of a deed. (*Shipley* v. *Shipley,* 274 Ill. 506.) In the *Shipley case* the plaintiff claimed that the land in dispute was conveyed to him by a deed destroyed before recording. In regard to the sufficiency of proof to establish the contents of it, the court stated at page 515: "The testimony as to what land was included in the alleged deed is not strong. The only evidence on which to support the decree on these points is that of Dr. Clark Shipley, who based his testimony on a reading of the deed some fourteen years before. * * * We cannot hold, on this record, that the proof as to the contents, execution and delivery of the alleged deed is as clear and convincing as the law requires."

Nor can I agree with the majority opinion that the fact that some of the other deeds gave a daughter a life estate with remainder to the heirs of her body indicates that the missing deed also must have done so, for that presumption overlooks the grantor's scheme of distribution, and all the circumstantial evidence with reference to the conveyance.

It is uncontroverted that the grantor, John Richards, was an able businessman, particularly in real-estate matters, having amassed some 1380 acres of farm land and city property; that he was striving to make the shares of each of his children as equal in value as possible; and that the deeds were executed by an able lawyer. Although Helen received more acres than her sisters, her land was the poorest, and the value of her share could be enhanced only by increasing her interest in it. That the grantor did this is patent from the fact that he executed two deeds to her.

Since the first deed conveyed to her a "life interest" in 240 acres of the "Home Place," the inference is compelling that the interest she received under the missing second deed, which included the remaining 30 acres of the "Home Place" and the "Martin Farm," was *not* a life estate; otherwise it would have been conveyed in a single deed, as the grantor did in conveying the same interest in two farms in one deed to his daughter Gertrude. If the grantor intended, as the majority opinion assumes, that the same interest should be conveyed in this second deed as in the first one, why did he divide up the "Home Place," and separate 30 acres from it to be included in the second deed, executed on the same day? The only reasonable inference from the grantor's action, which was carried out by able counsel, is that he conveyed a different interest, a fee, rather than a life estate, in the second deed.

This interpretation is consistent with his other dispositions, for the only time he gave more than one deed to a daughter was to convey a different interest. Thus, although Gertrude received two separate farms, they were granted in a single deed, since she had the same interest in both tracts; whereas two deeds were used to convey the two separate pieces of property granted to his daughter Lucille, since she was given a life interest in one deed, and a fee in the other deed. It would therefore seem clear that if the interest which daughter Helen was to receive in each of these tracts was the same, the lawyer would have followed the same practice as in the conveyance to Gertrude, namely, use one deed, and only one, to convey both tracts. In this connection, the master specifically found: "It is inconceivable that any attorney of Mr. Trapp's unquestioned ability would have prepared separate deeds to the 'Home Place' and the 'Martin Farm,' unless the estates conveyed or reserved were different to the two places."

The statement in the majority opinion that the grantor gave two deeds because two separate pieces of property were

involved is not accurate. The two deeds did not each involve mutually exclusive or separate tracts. As we have noted, the disputed deed included 30 acres which belonged to the "Home Place," most of which was granted in the first deed. Nor does the majority opinion reconcile its interpretation with the fact that the grantor used only one deed to convey the two separate farms to his daughter Gertrude. Contrary to the court's presumption, the plan of settlement indicates that the number of deeds did not depend upon, or correspond to, the number of pieces of property granted, but rather upon the interest granted. The grantor sought, not to give each daughter an identically worded deed, as the majority opinion assumes, but rather to achieve an equal division of the value of his property among his children, including fee interests and life interests.

Thus, it is evident that the grantor's plan of distribution fails to substantiate in any way plaintiff's self-serving recollections, as the majority opinion deduces. Moreover, the grantor's subsequent conduct and that of plaintiff's mother and the attorney also contradict plaintiff's claim.

The record shows that the grantor raised $11,000 which he gave to his daughter Helen and her husband in 1931 to pay their debts, and that some months later he asked for and received the return of the disputed deed. His conduct thereafter in offering to sell the "Martin Farm," covered by that deed, to the disinterested witnesses Barkley and Keist, and in subsequently conveying the entire 190 acres in fee to his other daughters, clearly indicate that he regarded himself as being revested with a fee. It is unlikely that a man as well versed in real estate as the grantor would attempt to sell and convey a farm in fee, if he had been revested with only his daughter's life estate. It is even more unlikely that the reputable lawyer who had drafted the original deeds would have executed the subsequent instrument to convey this property in fee to defendants, if the fee had not previously been vested in the plaintiff. More-

over, this lawyer, who later represented Helen when she requested her sisters to deed back the property to her, at no time made any reference in his correspondence to them of any vested remainder or other interest in Helen's daughter, Virginia, the plaintiff herein, as would have been reasonable if she actually held such a vested remainder as claimed.

Therefore, in the light of all this evidence substantiating the master's findings, that the original deed conveyed a fee interest to Helen, I cannot concur with the majority opinion which set aside those findings on the basis of testimony of limited probative value, at best.

As hereinbefore noted, it is my opinion that Helen returned the deed to the grantor with the intention of revesting title in him, and that such action was sufficient to vest in him, and his subsequent grantees, an equitable title to the property. *Happ* v. *Happ*, 156 Ill. 183; *Crossman* v. *Keister*, 223 Ill. 69.

Despite the protestations of Logan Holland, Helen's husband, that he was tricked into relinquishing the deed in 1935, it is clear from the entire record that the grantor asked for and Helen surrendered the deed in consideration for the $11,000 he gave her and her husband. This is evident from Helen's letters stating that within months after they received the $11,000 in 1931, her father asked for and she returned the deed. Moreover, such action was consistent with his plan to give each daughter an equal share of the estate. This court can take cognizance, as did the master, that the $47.50 an acre at which the grantor offered to sell this property covered by the disputed deed, amounted to less than the $11,000 which Helen enjoyed outright in 1931.

These circumstances, together with Helen's other statements in her letters that he (her father) was going "to give back to me" the "Martin Farm," indicate unequivocally that

she surrendered the recorded deed with the intention and understanding that the title be in her father. If she did not part with the deed with that intention, her reference to being "given back" the "Martin Farm" was unnecessary and meaningless. Her subsequent dissatisfaction with her eventual division, as indicated in her letters to her sisters, apparently because of the change in land values since the 1930's, cannot affect her previous surrender of the deed to her father with the intention that title be revested.

Nor is our conclusion affected by the discredited testimony of Logan Holland respecting the improper taking and retention of the deed by the grantor. On at least ten different occasions Holland testified that John Richards asked to see "the deed," but upon being asked how he knew which deed the grantor wished to see, since some three deeds had been given by 1935 when Holland claimed the request was made, Holland changed his testimony and stated that the grantor asked to see "the deeds." At different times he testified that he handed the grantor one deed, then two, and even three deeds. His testimony that Helen was not present when the deed was given back is contradicted by her letters. His statement that the $11,000 was a gift to him by his father-in-law is without conviction, particularly in view of his admission that he at no time expressed any gratitude for the gift, and that in 1948 he sent checks to the defendants for their proportionate share of the $11,000, as did Helen on another occasion. It is not startling, then, that the master did not give much credence to his testimony.

The majority opinion, however, does not refer to any of the foregoing evidence relating to the revesting of title in the grantor, but merely accepts plaintiff's argument that her remainder interest under the original deed could not be divested by her mother's action. That argument was designed to avoid the legal consequences of Helen's revesting of her fee interest in the grantor, and, as shown herein,

plaintiff's interpretation of the limitation in the original deed is without merit.

The decree entered by the chancellor pursuant to the findings of the master is overwhelmingly supported by the evidence.

Mr. CHIEF JUSTICE KLINGBIEL concurs in the foregoing dissenting opinion.